WILLIAM F. GREBENSTEIN *vs.* STONE & WEBSTER ENGINEERING CORPORATION.

Middlesex.    January 14, 1910. — March 25, 1910.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, BRALEY, SHELDON, & RUGG, JJ.

*Negligence,* Employer's liability, In use of electricity.  *Evidence,* Competency, Admissions and confessions, Relevancy and materiality.  *Witness,* Deposition.  *Practice, Civil,* Conduct of trial, Interrogatories, Entry of judgment, Amendment.  *Supreme Judicial Court.  Election.*

One, who had been set at work by his employer at stripping the lead covering from certain wire cables used for conducting electricity and who knew of the risk of working upon or near to such cables when they are heavily charged,

so that there was no duty on the part of the employer to warn him as to the danger attending the work, cannot maintain an action against his employer at common law, whatever his rights may be under St. 1909, c. 514, § 127, cl. 2, for injuries sustained by him because of the negligence of a foreman under whom he worked in assuring him that the work could be done safely and in telling him that the electricity had been shut off from the cables and in ordering him to use an improper tool for the work, such foreman being his fellow servant.

There is no duty incumbent upon an employer to warn an employee, who for some weeks has been at work for the employer at an electric power house and who on a certain day has been set at work at stripping the lead covering from wire cables used for the conducting of electricity, of the general danger in working upon or near such cables when they are heavily charged with electricity, especially when the employee is fully aware of such risk.

A plaintiff should not be allowed in cross-examination of a witness for the defendant to show that there had been an attempt or offer to compromise the plaintiff's claim.

In proving incompetency of a servant of the defendant in an action for personal injuries by an employee against his employer, evidence of a previous accident to the plaintiff caused by the negligence of the servant is not competent.

It cannot be said as a matter of law that it was not within the discretion of the judge presiding at a trial to permit the reading to the jury of a portion of the cross-examination of a witness whose testimony was taken by deposition, in which the cross-examiner read to the witness a long report by another person of an interview which he had had with the witness, which report was set out in full in the deposition, and which the witness in effect assented to as a true report of the interview, for the purpose of showing through a question immediately following the reading of the report, by the fact that there was no account in the report of a certain fact as to which the witness previously had testified, that the witness had first told any one of that fact at a time subsequent to the interview, although the report thus read to the witness contained many matters in themselves wholly immaterial and incompetent.

Even under the provisions of R. L. c. 173, § 57, before their scope was broadened by the enactment of St. 1909, c. 225, a defendant in an action of tort for personal injuries whose answer was merely a general denial had a right to interrogate the plaintiff upon any specific facts which would go to support his defense of a general denial, subject to the limitations stated in the statute itself, and was not limited to interrogatories as to matters upon which he had the burden of proof.

Where a bill of exceptions of a defendant in an action by an employee against his employer to recover for personal injuries, in which the declaration originally contained six counts, some at common law and some under R. L. c. 106, § 71, stated that at the close of all the evidence, after the counsel had conferred with the presiding judge, the judge at the request of the plaintiff's counsel and against the objection of the defendant allowed the plaintiff to strike out all but the first count of his declaration and to amend that count, and the plaintiff had a verdict, and where this court was of opinion that the issue on the common law count had been fully heard and tried and that the plaintiff could not recover at common law, but that the plaintiff might possibly have recovered under one of his counts under the statute, it was *held* that upon the record this court did not have the means of determining whether the circumstances, including the conference with the judge, were such that the plaintiff ought to be held to the election which he had made; and therefore the defendant's exceptions were sustained and the case was remanded to the Superior Court to ascertain whether, upon the facts

that might be shown, justice required that the plaintiff should be bound by the election which he had made at the trial, or whether he should be allowed to amend his declaration by striking out the single count which was left in the declaration as amended and substituting therefor a count or counts under R. L. c. 106, § 71.

TORT for personal injuries received by the plaintiff while at work for the defendant at the power house of the Boston Elevated Railway Company in that part of Boston called Charlestown. Writ dated November 15, 1907.

The case was tried before *Bond* J. During the course of the trial the deposition of one Waterman, taken at the request of the defendant, was read. In the deposition it appeared that Waterman was a fellow employee of the plaintiff. He testified in direct examination with regard to a conversation with the plaintiff previous to the accident in part as follows: A. "Well, I asked him [the plaintiff] if he had ever done it [the work of 'skinning cables']. He said he had. I said: 'Have you ever done that kind of work'? He said he had. That is my recollection of it." In cross-examination with regard to the same matter there was the following testimony: " Q. Mr. Waterman, tell us, if you will, what is the fact with reference to that ? Mr. Arnold [counsel for the defendant] understood you to say that Grebenstein told you that he hadn't done the work. I understood you to say that Grebenstein told you that he had done the work. Which was it you said ? A. Mr. Grebenstein said — he didn't say he had done the work. Now, I will tell you what he did say. He said, 'We will fool them; we will show them we can do the work.' That is Grebenstein's words, now, exactly. . . . — Q. When was it that you first told that to anybody, Mr. Waterman ? . . . A. I could not say that. — Q. Was it in Mr. Thompson's* office in Boston ? A. I believe it was at Mr. Thompson's office. . . . — Q. And that was last January ? A. Yes, sir. — Q. Mr. Waterman, you made a statement to Mr. Moore, did you, and I am going to read the entire statement to you, Mr. Waterman, to see if you can recall the statement ?"

Subject to an exception by the defendant, the plaintiff's counsel then was permitted to read to the witness a statement

---

* Mr. Thompson was counsel for the Boston Elevated Railway Company, an action against which by the same plaintiff was tried at the same time with this action.

covering forty-two lines of the printed record. The first twenty-nine lines of the statement contained a description of the work which the plaintiff, the witness and others were doing immediately preceding the accident. The remainder of the statement was as follows: " The work was entirely new to Billy [the plaintiff] and he was not fit for such work. It requires men of experience to safely do such work. I knew how to do it and I was the first to show Billy. I cleaned the first cable and Billy watched me do it, to see how it was done. Billy had the hammer . . . a screw-driver, the cable-knife we used between us, and I had it at the time of the explosion. Billy did not have the knife at the time of the explosion. I looked at the cable after the accident and it showed plainly that something had punctured the insulation. Billy never did such work before. I know because I showed him at the beginning, and I knew by the way he went about it and did it. A green man like him ought never to have been set at work on such a job. The company are liable for putting such a man at such work."

The testimony then continued: " Q. Now, there is not anything in that, Mr. Waterman, is there, in that statement, about Billy having told you, ' We will fool them and show them how we do the work ' ? A. There is not anything in that statement, no. — Q. So, that, seeing that it is not in that statement, would you say that the first time you told it to anybody was to Mr. Thompson? A. I believe it was, is my recollection."

The interrogatories of the defendant to the plaintiff, which are referred to in the opinion and which the plaintiff refused to answer, were as follows:

" 3. Is it not true that during the time that you worked at the Charlestown power house, prior to the said accident, said power house, so far as you have personal knowledge, was constantly in operation, that is to say, electricity was then being constantly generated ?

" 4. Is it not true that during the time you worked at the Charlestown power house, prior to your accident, electricity was being constantly generated and transmitted through cables to points outside said power house ?

" 5. Is it not true that during the entire time that you were working at the Charlestown power house, prior to your injury,

so far as you have personal knowledge, one or more of the engines furnishing power to the machines generating electricity was constantly in motion?

" 6. Is it not true that on the day you were injured, and at the time you began the job of stripping lead covers from the wires or cables, being the job in connection with which you received the injury for which this suit is brought, currents of electricity were passing through said wires or cables?

" 7. Is it not true that at no time after you began the job of stripping lead covers from the wires or cables, being the job in connection with which you received the injury for which you are now suing, was any new current of electricity sent through any of said wires or cables?

" 8. Is it not true that at no time after you began the work of stripping lead covers from the wires or cables, being the job in connection with which you received the injury for which this suit is brought, was any new or greater current of electricity sent through the particular cable on which you were injured?

" 9. Is it not true that at the time you went to work stripping lead covers from the wires or cables, that is to say, at the time you began the particular job on which you received the injury for which this suit is brought, you believed that a current of electricity was passing through some or all the wires or cables from which you were intending to strip the lead cables?

" 10. At the time you began the job of stripping lead covers from the cables, being the job in connection with which you received the injury for which you are now suing, did you believe that any current of electricity was passing through any of the wires or cables from which the lead covers were to be stripped?

"11. Did you at any time after you began the work of stripping lead covers from the wires or cables, and up to the time you received your injury, believe that no current of electricity was passing through any of the wires or cables on which you worked?

" 12. Is it not true that you and one Waterman were alone together at the moment you received the injury for which this suit is brought?

" 13. What was inside the lead covering, a portion of which

you were engaged in removing or detaching at the time you were injured?

"14. Did you do any work upon or in connection with either the new switchboard or the old switchboard at the Charlestown power house prior to the time you received your injury, and if so, what was it?

"15. Were you, prior to the time you began to work at the Charlestown power house, familiar with the word or term 'electrician' as descriptive of a class or kind of workmen?

"16. Were you, prior to the time you received the injury for which you are now suing, working at the Charlestown power house principally or wholly as an electrician?"

Other facts are stated in the opinion. The jury returned a verdict for the plaintiff in the sum of $30,000; and the defendant alleged exceptions.

*W. G. Thompson & E. K. Arnold*, (*S. H. Batchelder* with them,) for the defendant.

*D. H. Coakley*, (*H. D. Moore & W. Flaherty* with him,) for the plaintiff.

SHELDON, J. This is a very voluminous record; but the main question presented is comparatively simple. The plaintiff's declaration contained originally six counts, but the case finally went to the jury upon only the first one. This count, as amended, alleged that the plaintiff was employed by the defendant at work in a power house, and was negligently "directed by the one in charge under said defendant" to remove lead coverings from certain wires which were the main feeders running from the switchboard in that power house; that the defendant knew that this work was dangerous and this was not known to the plaintiff; that the defendant failed to warn him of the danger, and urged him to use at his work tools which added to the dangers thereof, as the defendant knew, but failed to warn him thereof or to instruct him as to avoiding the same, by reason whereof he was greatly injured.

The particular negligence upon which the plaintiff relied at the trial was the conduct of one McGerry in setting him to work at stripping the lead covering from certain electric wire cables, with, as the plaintiff contended, an assurance that the work could be done safely, or that the cables were "dead"; and fur-

ther in ordering him to use a chisel instead of a hammer in doing the work.   This occurred some weeks after the plaintiff had begun work at the power house.   The cables were not dead ; the plaintiff in removing the lead from one of them apparently cut also through the rubber insulation which was underneath the lead ; and he suffered a violent shock of electricity through which he received the serious injuries complained of.

McGerry was at least a foreman, and it may be that he was a superintendent for whose negligence the defendant could have been held liable under R. L. c. 106, § 71, cl. 2, now St. 1909, c. 514, § 127, cl. 2.   But McGerry was still a fellow servant of the plaintiff ; the defendant could not be made answerable at common law for his negligence ; *Colford* v. *New England Structural Co., ante,* 283 ; and it was only upon a count at common law that the plaintiff finally relied.   There was no duty incumbent upon the defendant to warn the plaintiff of the general danger of working upon or near to heavily charged electric wire cables, both because that was one of the obvious risks of his employment and also because he was fully aware of that risk. *Chisholm* v. *New England Telephone & Telegraph Co.* 176 Mass. 125, 127.   *McIsaac* v. *Northampton Electric Lighting Co.* 172 Mass. 89, 91.   *Beique* v. *Hosmer,* 169 Mass. 541, 543.   *Linch* v. *Sagamore Manuf. Co.* 143 Mass. 206.   But where the master is under no such duty, he cannot be held liable at common law for the negligent act of one servant, though of higher rank than other servants, in giving orders of which the execution results in injury to another servant.   *Ahern* v. *Hildreth,* 183 Mass. 296. *Healey* v. *George F. Blake Manuf. Co.* 180 Mass. 270.   *O'Brien* v. *Rideout,* 161 Mass. 170.   *Kalleck* v. *Deering,* 161 Mass. 469. *Moody* v. *Hamilton Manuf. Co.* 159 Mass. 70.   This case very much resembles *Kenney* v. *Shaw,* 133 Mass. 501.   The plaintiff there was injured in drilling out a hole in which a previous charge of blasting material had failed to explode.   He was set to do this work by a superintendent, with an implied assurance of safety.   It was held that he could maintain no action at common law against his employer, although he now could have a remedy under the statute.   *Malcolm* v. *Fuller,* 152 Mass. 160.

It follows that the plaintiff could not maintain his action upon the only count which was submitted to the jury ; and a verdict

should have been ordered for the defendant in accordance with its first request.

The plaintiff ought not to have been allowed, in cross-examining Buckley, to show that there had been an attempt or offer to compromise the plaintiff's claim. This was wholly wrong, and it was manifestly injurious to the defendant. The ruling cannot be supported on the ground that material admissions made by a party may be proved against him, though made in the course of negotiations for a settlement, which by themselves are inadmissible. *Marsh* v. *Gold*, 2 Pick. 285, 289, 290. *Gerrish* v. *Sweetser*, 4 Pick. 374. *Dickinson* v. *Dickinson*, 9 Met. 471. *Upton* v. *South Reading Branch Railroad*, 8 Cush. 600. *Gay* v. *Bates*, 99 Mass. 263. *Draper* v. *Hatfield*, 124 Mass. 53. *Higgins* v. *Shepard*, 182 Mass. 364. No such admissions were sought to be shown, even if Buckley had authority to make them, which was not shown.

Evidence of the previous accident to the plaintiff was incompetent. It had no proper bearing upon any of the issues in the case. *Aiken* v. *Holyoke Street Railway*, 184 Mass. 269, 274. *Dean* v. *Murphy*, 169 Mass. 413. *Burgess* v. *Davis Sulphur Ore Co.* 165 Mass. 71, 75. *Maguire* v. *Middlesex Railroad*, 115 Mass. 239. *Collins* v. *Dorchester*, 6 Cush. 396. The competence of McGerry was one of the issues when the evidence was received;* but evidence of a specific act of negligence on his part was not competent upon that issue. *Olsen* v. *Andrews*, 168 Mass. 261, 265, and cases cited.

We cannot say that the judge might not in the exercise of his discretion allow the statement of Waterman to be read to the jury. It contained much matter that was wholly immaterial, but it might be found to be in some respects inconsistent with parts of the testimony which Waterman had given. It would have been better to allow the jury to hear only those parts of the statement which did tend to vary or control his previous testimony. But it could be found that this was one connected statement of the whole matter as it then lay in Waterman's

---

* The sixth count of the declaration, with specifications in regard thereto, alleged incompetency of McGerry. At the close of all the evidence the presiding judge permitted the plaintiff to amend the first count and to strike out all of the other counts of the declaration.

memory; and the course adopted cannot be declared as matter of law to be wrong.

It was provided by R. L. c. 173, § 57, that either party to an action might "file ... interrogatories to the adverse party for the discovery of facts and documents material to the support or defense of the action." The scope of this section has been much broadened by St. 1909, c. 225, which took effect five days after the Superior Court had ruled upon the interrogatories filed by the defendant in this action. The rights of the parties, accordingly, must be decided upon the earlier statute.

Under this statute it has been said that the right of either party to file interrogatories was limited to such matters as were material to the support of his own case, and did not extend to matters in support of the case of the adverse party. *Wilson* v. *Webber*, 2 Gray, 558. *Sheren* v. *Lowell*, 104 Mass. 24, 27. *Wetherbee* v. *Winchester*, 128 Mass. 293. *Davis* v. *Mills*, 163 Mass. 481. But this does not mean that he could file interrogatories only as to matters upon which he had the burden of proof, or that a defendant whose answer was merely a general denial could not require the plaintiff to answer any interrogatories. *Smith* v. *Beaufort*, 1 Hare, 507, and 1 Phillips, 209. In our opinion, such a defendant had the right to interrogate the plaintiff upon any specific facts which would go to support his defense of a general denial, subject of course to the limitations stated in the statute itself. This follows from the reasoning of the court in the cases above cited. And see *Gunn* v. *New York, New Haven, & Hartford Railroad,* 171 Mass. 417 ; *Robbins* v. *Brockton Street Railway,* 180 Mass. 51 ; and *Carroll* v. *Boston Elevated Railway,* 200 Mass. 527. The plaintiff therefore ought to have been required to answer some at least of the interrogatories put to him, and it does not appear that they called upon him to disclose either the names of his intended witnesses or the manner in which he proposed to prove his case. R. L. c. 173, § 63. But as the case has turned, the defendant has not been prejudiced by the refusal of the court to require answers to any of those interrogatories. The plaintiff is unable to maintain his action upon the only count now left in the case. If the Superior Court shall allow him to amend his declaration, that court will prescribe the terms upon which he may do so. If, upon the

position of the case at that time, justice shall require that the defendant be allowed to file new interrogatories to the plaintiff under the broader privilege given by St. 1909, c. 225, the Superior Court undoubtedly will allow that to be done.

We do not deem it necessary to consider the other exceptions. They may not be again presented in the same way.

The defendant asks us to order judgment in its favor, under the provisions of St. 1909, c. 236. But that statute is permissive only, not mandatory; and upon the facts now appearing justice does not require us to make such an order without more. We do not doubt that if at the end of a long and expensive trial a party has voluntarily and deliberately chosen to put his case or his defense upon one ground rather than another, or has elected to seek one remedy rather than another, both or either of which might have been open to him, he ordinarily should be held to abide by his choice. This was done in *Kiely* v. *Corbett, ante,* 158. But we do not know fully what the circumstances were in the case at bar. The exceptions state that " at the close of the evidence, after counsel had conferred with the court," the court at the request of the plaintiff's counsel and against the objection of the defendant, allowed the plaintiff to strike out all but the first count of his declaration and to amend that count. The plaintiff had a verdict upon this count. But, as we have seen, a verdict should have been ordered thereon for the defendant, although the plaintiff might perhaps have recovered upon his counts upon the statute, if those had been submitted to the jury. We have not the means of determining whether the circumstances, including the conference with the judge, were such that the plaintiff ought now to be held to the election which he then made. Upon these facts we are of opinion that he ought not to be allowed to retry the issue of the defendant's liability at common law, which has been fully heard and tried out; *Archer* v. *Eldredge,* 204 Mass. 323; but that it should be left to the Superior Court to ascertain, whether upon the facts that may be shown justice requires that the plaintiff should be bound by the election which he made at the trial, or whether he should be allowed to set up again the claim which he then abandoned and to amend his declaration by striking out the single count now left therein, and substituting therefor counts under R. L.

c. 106, § 71, the act which was in force at the time of his injury, and the provisions of which are now contained in St. 1909, c. 514, § 127.

Accordingly the defendant's exceptions are sustained, and judgment will be entered for the defendant unless the Superior Court shall, within thirty days from the filing of the rescript in that court, and upon such terms as it may prescribe, allow the plaintiff to amend his declaration as already stated.

*So ordered.*