BESSEY, Respondent, vs. MINNEAPOLIS, ST. PAUL & SAULT SAINTE MARIE RAILWAY COMPANY, Appellant.

*April 8—June 18, 1913.*

*Fraud: Release of claims: Signature procured by false representations: Evidence.*

1. If a party to a written instrument was induced to sign it by relying on false and fraudulent representations, and was guilty of no negligence in failing to ascertain what the instrument in fact was, he is not bound by it; but to accomplish the impeachment of a formal written instrument on such grounds the proof must be clear and convincing beyond reasonable controversy.

2. The evidence in this case is *held* insufficient to sustain a finding by the jury that plaintiff's signature to a release of his claims to compensation for certain personal injuries was procured by fraud and misrepresentation of defendant's agents.

APPEAL from a judgment of the circuit court for Winnebago county: GEO. W. BURNELL, Circuit Judge. *Reversed.*

This is an action to recover damages for personal injuries suffered by the plaintiff while in defendant's employ as an air-hose coupler in making up a freight train. On the evening of the day when the injury was received plaintiff was engaged as one of defendant's air-hose couplers in making up a freight train in defendant's railroad yards at Fond du Lac, Wisconsin. The destination of this train was Chicago by direct route from Fond du Lac.

Under the rules of the company such trains were to be made up by a switching crew and the car and hose couplers. It appears that on the night in question, after the switching crew had placed some freight cars for this Chicago train on a sidetrack and while they were engaged in switching other cars onto this track and plaintiff was making the air-hose coupling between two of the cars standing on this track, five or six moving cars came in contact with the cars between which plaintiff was working and caused them to move against him and thus causing him to fall and to be caught under the cars and wheels and thereby inflicting the injuries he complains of. Much evidence was adduced upon the trial bearing on the question of the negligence of the switching crew in "kicking" cars onto the track and against the one at which plaintiff was making the air-hose coupling, and the question of plaintiff's contributory negligence and his assumption of the risk. The view we take of the case does not make necessary an inquiry into these questions, and the evidence bearing thereon need not be stated. After the injury members of the switching crew with the assistance of one Collins, who was

Bessey v. Minneapolis, St. P. & S. S. M. R. Co. 154 Wis. 334.

also engaged in coupling the cars and air-hose, removed the plaintiff from under the car and took him to St. Agnes hospital.    Dr. Wiley, the defendant's physician and surgeon, attended and treated him.

A Mr. Harrington, defendant's claim agent, called upon the plaintiff at the hospital on October 6th for the purpose of investigating the extent of his injuries and ascertaining the facts of the accident and making an adjustment of the claim which the plaintiff might assert regardless of defendant's liability.    He again called two or three days thereafter for the same purpose.    On both of these occasions he had an interview with the plaintiff on this subject.    He made his third call October 13th, when a release, which was an acknowledgment of satisfaction by the plaintiff for all claims to compensation for the injuries sustained, was executed and a draft of $117.75 was delivered to the plaintiff in settlement, being the amount the defendant claims was agreed upon with the plaintiff.    The plaintiff claims that he was led to believe that this amount was received as wages to cover the period of his sickness, and that he understood the writing signed by him to be a simple receipt for the money and that it was so represented to him by the agent.    He also asserts that at the time of executing the release he was afflicted with pain to an extent that rendered him physically and mentally so weak that he had not the capacity to clearly understand the transactions.    It is the defendant's claim that the plaintiff fully understood the nature of the transaction and that he freely agreed to the making of the settlement, and that its representative explained and read to him the contents of the release before he signed it and that he acknowledged that he fully understood it and executed it without any coercion or deception being practiced upon him by defendant's agents or servants, and that he acted freely and understandingly in making the settlement.

The court submitted the case to the jury upon a special

verdict, and among other facts they found the following: (1) that the plaintiff signed the release in two places where his signature appears; (2) that such signatures were procured by fraud and misrepresentation of defendant's agents; (3) that the plaintiff was of sound mind on said 13th day of October, 1910. They also found that plaintiff was injured at the time and place alleged; that he did not assume the risk of the alleged danger; and that defendant's employees were guilty of negligence and the plaintiff was guilty of contributory negligence, and that these negligences proximately contributed to plaintiff's injury, and that defendant's negligence was the greater.

This is an appeal from the judgment awarded in plaintiff's favor.

For the appellant there was a brief by *W. A. Hayes,* attorney, and *John L. Erdall,* of counsel, and oral argument by *Mr. Hayes.*

*William N. Powers,* for the respondent.

The following opinion was filed April 29, 1913:

SIEBECKER, J. It is contended that the finding of the jury that the plaintiff's signature to the release in question was procured by the fraud or the misrepresentation of the defendant's agent is not sustained by the evidence. It is declared in repeated adjudications of this court that if a party to a written instrument was induced to sign it by relying on false and fraudulent representations and he was guilty of no negligence in failing to ascertain what the instrument in fact was, he is not bound by it. *Dowagiac M'f'g. Co. v. Schroeder,* 108 Wis. 109, 84 N. W. 14. It is also well recognized as a principle that "To accomplish impeachment of a formal written instrument on such grounds the proof must be clear and convincing beyond reasonable controversy." *Steffen v. Supreme Assembly,* 130 Wis. 485, 110 N. W. 401.

Applying these principles to the case before us, can it be

said that the evidence sustains the finding of the jury to the effect that plaintiff's signature to the release in question was procured by the fraud of defendant's agents? Plaintiff's evidence as to his mental condition at the time he signed the release is, in many respects, irreconcilable, and in its probative force is not clear nor convincing. Upon the trial he testified that when the defendant's agent, Mr. Harrington, conferred with him and obtained the release, his mind was in a state of stupor and confusion and that he had no clear understanding of the nature of the transaction and understood that he was being paid two months' wages. It appears, however, that as to other details of what took place on this occasion his recollection is reasonably clear and definite and wholly incompatible with the claim that his mental condition was such that he did not understand the nature of the transaction or comprehend the facts involved in the matter. Upon his examination before trial his recollection of the particulars concerning the amount of the draft delivered to him was clear and distinct. He stated that he knew at the time the draft was delivered the amount thereof, and that he was then satisfied with receiving this sum because he did not then believe that his injuries were of a serious nature. He also testified that he did not consider this sum so received by him was insufficient until he had been at home for some time and learned that his injuries were of a more serious and permanent character than he believed them to be in the beginning. Plaintiff's statements as to his mental condition at the time of the transaction when he executed the release and received the draft in payment thereof are contradicted by Dr. Wiley, Sister Everesta, the attendant, Ming, an inmate named Pindar, and the defendant's representatives, Harrington and Richardson. These witnesses observed the plaintiff at the time, and some of them before and after the execution of this release, and conversed with him in regard to the same, and they all testify

that he displayed a normal and rational condition of mind and manifested an intelligent and comprehensive understanding of his affairs; that he spoke of the transaction as a settlement with the defendant, and referred to the receiving of the amount of the draft as a payment thereof. All the evidence given by the witnesses, except that of plaintiff's cousin, Schooley, tends to show that at the time of these negotiations plaintiff was in full possession of his mental faculties; that he had the intelligence to comprehend them and the contents of the release; that he was capable of reading and understanding it. The evidence of defendant's agents is that plaintiff read the release with Harrington, who prepared it and explained its contents to him, and that he freely assented to it.

These evidentiary facts and many of the accompanying circumstances, together with the plaintiff's conduct in the matter, make it clear that he was not misled nor deceived into signing the release under the belief that it was a mere receipt for two months' wages. The evidence falls far short of the legal requirements to impeach the formal written release. In probative force it is not of such weight and credibility as to constitute clear and convincing proof beyond reasonable controversy of the alleged fraud in procuring plaintiff's signature to the release, and therefore as a matter of law does not sustain the finding of the jury on this question. *Richards v. Millard,* 146 Wis. 552, 131 N. W. 365; *Demark v. Milwaukee E. R. & L. Co.* 142 Wis. 624, 126 N. W. 13; *Jackowski v. Ill. S. Co.* 103 Wis. 448, 79 N. W. 757.

*By the Court.*—The judgment appealed from is reversed, and the cause remanded with directions to dismiss the complaint.

A motion for a rehearing was denied, with $25 costs, on June 18, 1913.