KENESE, Appellant, vs. CUDAHY BROS. COMPANY, Respondent.

*April 8—April 30, 1918.*

*Master and servant: Injury to employee: Release: Procurement through fraud: Degree of proof required: Trial: Changing finding in special verdict.*

1. In an action for personal injuries to an employee, where plaintiff claimed that a release executed by him had been procured by fraud, the court properly instructed the jury that "to impeach a formal written instrument on the ground of fraud or mistake the proof must be clear and convincing beyond reasonable controversy."

2. In this case, the unsupported testimony of the plaintiff in denial of a settlement, that the release was not translated or explained to him, and that he believed and understood that the writing he signed was only a receipt for $50 for wages, being refuted by several witnesses whose credibility is corroborated by the facts and circumstances, the trial court properly changed a finding by the jury that the release was procured by fraud.

APPEAL from a judgment of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Affirmed.*

This action was brought by the plaintiff to recover damages for personal injuries alleged to have been suffered by him

while in the defendant's employ. The negligence charged was failure to provide a safe place in which to work, safe employment, safe equipment and appliances, failure to warn the plaintiff of the danger incident to his employment, and, more specifically, negligence in putting plaintiff to work removing barrels of meat in which nails protruded from the top and side where plaintiff was required to take hold with his hands. Plaintiff claims that on one of these nails so protruding his right hand was injured, from which blood poison set in, causing severe and permanent injury to his arm and hand. Defendant's answer denies the negligence and sets up as a defense to plaintiff's cause of action a release signed by the plaintiff.

The case was tried before the court and a jury. Defendant's requests for a nonsuit and a directed verdict were denied. By a special verdict the jury found that the release was procured by fraud; that the defendant was guilty of negligence proximately causing the plaintiff's injury; and damages were awarded to the plaintiff in the sum of $2,870. The plaintiff's motion for judgment in conformity with the verdict was denied. The defendant's motion to change various answers of the special verdict was denied excepting as to the answer to question No. 1 of the special verdict, which found that defendant secured the release through fraud. The court entered an order changing the answer to question No. 1 from "Yes" to "No" and directed judgment to be entered upon the verdict so changed, dismissing plaintiff's complaint with costs. From this judgment appeal is taken.

The cause was submitted for the appellant on the brief of *William L. Tibbs* and *Willis E. Lang,* attorneys, and *Daniel W. Sullivan,* of counsel, all of Milwaukee, and for the respondent on that of *L. A. Dahlman* of Milwaukee.

SIEBECKER, J. It is contended that the trial court erred in setting aside the jury's finding to the effect that the re-

lease obtained by defendant in settlement of claims and de-
mands·for plaintiff's injury was procured from plaintiff by
fraud, and that such error resulted from an improper appli-
cation by the court of the following rule to the case: "That
to impeach a formal written instrument on the ground of
fraud or mistake the proof must be clear and convincing be-
yond reasonable controversy." The trial court so instructed
the jury and manifestly applied this rule to the case in setting
aside the jury's answer to the first question of the special
verdict. It is argued that this rule has not been applied to
cases like the instant one and is properly applicable only in
equity cases, or as a defense in an action at law where it is
first proven or admitted that the parties intended to make an
instrument of the nature or kind in question. There is no
question that this rule has been applied in equity cases as
shown by the numerous authorities in this court, some of
which counsel cites to the court's attention. The applica-
bility of the rule to the instant case is also shown in cases
that have received consideration in this court, of which the
following may be mentioned: In *Bowe v. Gage,* 127 Wis.
245, 106 N. W. 1074, the plaintiff, a real-estate broker,
brought action to recover a commission for procuring a pur-
chaser of defendant's farm; defendant pleaded settlement
with plaintiff and that he had plaintiff's receipt acknowledg-
ing full payment of the claim. It was urged that the trial
court erred in adopting and communicating to the jury the
rule of law "as to the quantum and character of evidence nec-
essary to warrant a finding of fraud, inducing the settlement
and receipt. The charge merely cautioned the jury that they
were to find such fraud only if they were 'satisfied by a pre-
ponderance of the evidence' that it occurred; and this, too, in
face of a request for further instruction that, notwithstand-
ing a mere preponderance of evidence, the finding of fraud
should not be made unless the jury were satisfied by evidence
that is clear, satisfactory, and convincing. It is well stated

that certain facts, including fraud, mistake, and the like, are not to be found as readily as the affirmative of ordinary issues not involving turpitude, or the repudiation of deliberate and formal writings, and while the doctrine earlier declared, that the evidence must establish such facts beyond reasonable doubt, has been abandoned, it is held that only upon evidence that is clear and satisfactory can an affirmative finding of fraud properly be made.   A court, in submitting the issue of fraud to a jury, does not perform its duty without instruction marking this distinction" (citing numerous cases in this court).   This rule was re-affirmed in the following cases dealing with releases pertaining to transactions of the nature and kind involved here: *Steffen v. Supreme Assembly of Defenders,* 130 Wis. 485, 110 N. W. 401; *Demark v. Milwaukee E. R. & L. Co.* 142 Wis. 624, 126 N. W. 13; *Bessey v. M., St. P. & S. S. M. R. Co.* 154 Wis. 334, 141 N. W. 244. The rule followed by the trial court is well established and we discover no good reason for holding it inapplicable in the instant case.

Can it be said that the evidence in the case is clear, satisfactory, and convincing on the question of fraud which induced the plaintiff to sign the release ?   The jury found as fact that the release was secured by fraud, but the trial court reversed this finding upon the ground that the evidence did not sustain the finding of the jury.   There is no dispute but that the plaintiff signed the release, but he avers that he signed it under the belief that he was signing a receipt for $50 which defendant offered to pay him as wages.   Plaintiff is unable to understand, speak, read, or write English; he denies that he and Daly, defendant's manager, had any negotiation of settlement before the paper was signed; he states that the contents of the paper were not translated to him by Dr. Junge, his attending physician at the hospital where the paper was signed; that it was not explained to him; that he did not ask the doctor to translate it; that he did not know

it was a release, and that he did not know that he had a claim against the defendant.  Plaintiff also states that the doctor told him that Daly paid the $50 when the paper was signed "for the time I was sick," and that he would receive only $5 a week while he was in the hospital.  Dr. Junge testified in detail to the negotiations of settlement, the payment of the $50, the offer of a settlement by Daly on the day he first called at the hospital on August 6th and the second day thereafter when the release was signed, the payment of the $50 to plaintiff, and the agreement of Daly to pay the hospital and doctor bills.

It appears that plaintiff had been in the hospital continuously from July 23d, that he had suffered seriously from septicemia in his hand and arm resulting from the injury to his hand caused by the nail wound; that his hand had been operated on and otherwise treated; that his condition on August 6th and 8th had improved so that he was practically free from fever and severe pain, that he was able to sit up and be about his room a part of the time and was in his normal mental state.  The evidence of Dr. Junge and Mr. Daly is to the effect that Mr. Daly, by telephone appointment with Dr. Junge, called at the hospital on August 6th to see plaintiff; that the doctor acted as interpreter for the plaintiff and Daly; that Daly proposed as a settlement for the alleged injury to plaintiff from the accident to pay the hospital expenses, the doctor bills, and to pay the plaintiff $50; that plaintiff, after having the offer fully explained to him by the doctor, accepted the offer; that Mr. Daly on August 8th again came to the hospital with the written release introduced in evidence and brought with him an amount in cash over and above the sums needed to pay plaintiff the $50, the doctor bills, and the hospital bills; that the doctor took the release, went to the plaintiff's room alone, and there translated it to the plaintiff and explained to him that if he signed the paper and took the $50 it would be a full settlement of all his claims against the defendant for his injury; that plaintiff thereupon hesitated

to sign the same and stated that he ought to be paid something additional for the time he might remain disabled; that Mr. Daly was then called, came to plaintiff's bedside, and was informed of the plaintiff's request for additional compensation. Daly offered him an additional $5 a week until he left the hospital, to which the plaintiff assented and signed the release. The doctor testified that he informed the plaintiff that he was unable to fix a definite period within which he would be recovered. Daly testified that the doctor read the release in parts to the plaintiff in his presence and then spoke in German to plaintiff as though he translated it. Anna Hein testified that she was called to plaintiff's room on the occasion when the release was signed; that she speaks and understands English and German; that the doctor explained the release to the plaintiff in her presence and hearing; that the plaintiff seemed to understand it; that he signed it in her presence, and that he assented expressly to her signing it. It is unprofitable to state further in detail the evidence of these witnesses as to what occurred and what was said and done on the occasions of the 6th and 8th of August respecting this settlement and the execution of the release. The statements of the plaintiff in denial of a settlement and that the release was not translated or explained to him by Dr. Junge and that he believed and understood that the writing he signed was only a receipt for $50 for wages, are refuted by these several witnesses, whose credibility is corroborated by the facts and circumstances in the case and stand denied only by the bare assertion of the plaintiff. The record fails to show the quantum and character of evidence which is required in order to find that the fraud charged has been established by clear, satisfactory, and convincing evidence. It follows that the trial court properly changed the jury's answer to the first question of the special verdict and that the judgment must stand.

*By the Court.*—The judgment appealed from is affirmed.