Hanley, Appellant, vs. Hines, as Agent, Respondent.

*January 12—February 7, 1922.*

*Compromise and settlement: Presumption: Burden of proof: Sufficiency of evidence.*

1. Compromise settlements are greatly favored in the law, and when made, particularly when evidenced by writings signed by the claimant, cannot be impeached on the ground of fraud or mistake unless the evidence clearly, beyond reasonable controversy, establishes such mistake or fraud.

2. In personal injury actions wherein the defense of settlement is interposed, the burden of proving the settlement is on defendant; but when a proper release, duly executed and signed, is introduced, the settlement can only be overcome by evidence on behalf of the plaintiff which is clear and convincing beyond reasonable controversy.

3. Where plaintiff's testimony as to how an accident occurred was opposed to the weight of disinterested testimony and barely credible, and in so far as the legal liability of the defendant company was concerned she had a doubtful case, the evidence (set out in the opinion) is *held* not to overcome the presumption created by a release signed by her, which she could have read, and a check which she cashed containing a provision that it was in full payment of her loss of personal property and in satisfaction of her claim for personal injuries.

Appeal from an order of the circuit court for Milwaukee county: Oscar M. Fritz, Circuit Judge. *Reversed.*

The appeal is from an order of the circuit court reversing the judgment of the civil court of Milwaukee county and granting a new trial of said action in the circuit court.

Action for personal injuries. The plaintiff is a resident of the city of Milwaukee, twenty-four years of age, having been born, raised, and educated in such city, and at the time of the happening of the injuries complained of was employed by the Federal Rubber Company at Cudahy, Wisconsin, in a clerical position. She also had seven years of experience as a telephone operator with the Wisconsin Telephone Company and the Milwaukee Sentinel.

On the 28th day of February, 1920, at about 7:25 a.m., she left her home in order to take a 7:45 a. m. passenger train at Allis station for Cudahy. In order to reach the station she first took a street car to the corner of Reed street and National avenue in the city of Milwaukee, and then was obliged to walk a distance of about two and one-half blocks before reaching the station. At Allis station the tracks of the railroad company are elevated, and to reach the platform it is necessary to ascend steps leading thereto. On the morning in question the train was a few minutes late. When the street car on which she was riding reached the corner of Eleventh and National avenues she met one James A. Sullivan, who intended to take the same train, and he accompanied her when she walked from Reed street and National avenue to the station.

Sullivan testified that he told the plaintiff as they left the street car that they were late and that they would have to hurry, and both started to run for the train, and when they arrived at Allis station the evidence shows they were both well winded.

Plaintiff claimed that when she arrived on the railroad platform the train was standing still and that she boarded the third passenger coach from the front, and that as she was about to step on the third step of the coach the train jerked, causing her to be precipitated onto the platform, and as the result thereof she sustained the injuries complained of. All of the other witnesses in the case testified that at the time the plaintiff attempted to board the train it was moving, and the plaintiff stands alone in her contention that the train was standing still.

Frank Kline, the flagman on the train, Charles R. Pratt, the brakeman, Richard C. Bradley, a freight conductor of the railway company, and George J. New, the engineer on the train, testified that when the train started all the passengers had boarded the same. Bradley also testified that he saw the plaintiff at National avenue, before she ascended

the station platform, and that she was running at that time; that the train was moving when she arrived at the steps of the coach which she intended to board; that she started to run along with the train, and that she let the fourth coach pass by; that the train was going somewhat faster than the plaintiff was running, and that in attempting to grab the hand-rail alongside of the steps of the coach she was swung around and thrown down onto the platform.

William H. Horn, Thomas Sommers, and James A. Sullivan, all employees of the Newport Chemical Company at Carrolville, Wisconsin, arrived at Allis station at or about the time that the plaintiff arrived and saw the plaintiff running to catch the train, and testified that the train was moving at the time she attempted to board it.

One Carl L. Young, an assistant claim agent of the defendant company, whose office was on the fourth floor of the Railway Exchange Building, Milwaukee, testified that after the accident he visited the plaintiff at her home for the purpose of making a settlement with her, and that some time thereafter the plaintiff called upon him at his said office; that the plaintiff and witness discussed the matter of settlement; that witness made an offer to settle her claim for $210, which offer was accepted by the plaintiff; that thereafter he prepared and presented to the plaintiff a release in duplicate, under and pursuant to the terms whereof the plaintiff agreed to and did make a settlement of her claim with the railway company, which release provided, among other things, for a full discharge of the company from all claims and demands which she then had against the company by reason of the injury received by her, and for damages for loss of and injury to her clothing and other personal property. That when said release was handed to the plaintiff she read the same, and, at the request of the witness, wrote in her own handwriting, over her signature, the following, to wit: "I have read and understand this release." That thereupon the witness handed to the plaintiff a check of the company for

$210, which check, among other things, contained the following: "In full settlement of claim for injuries received and loss and damage to clothing." The witness also testified that he advised the plaintiff that she could take the check down to the office on the first floor of the building and have the same cashed, and that the plaintiff then left the office of the witness and proceeded to the railway company's office and cashed the check.

The plaintiff testified that she signed the release in duplicate and that she also wrote the portion above referred to, "I have read and understand this release;" that she received the check and took it to the office of the company and cashed it; that in fact she did not read the release or the check; that at the time one of the duplicate releases was presented to her for signature, Young placed his hand over the release so as to hide the contents thereof, but that when she signed the other duplicate release Young did not hide the contents of the release with his hand, and that she could have read it if she desired; that before she signed the release Young told her that she could not sue the United States government because the railroads were in the control of the government; that, Young also said to her, before she signed the release, that if she did not trust him he could not trust her; that he was paying the sum of $210 in satisfaction of her claim for damage to her clothes, for her doctor bill, and for attendance, and that the claim for personal injuries would receive attention later on and would be taken care of.

The case was submitted to the jury on a special verdict, and the jury answered among other things: (1) that the plaintiff was injured on February 28, 1920, while boarding defendant's car; (2) that the car was suddenly jerked while the plaintiff was in the act of boarding it; (3) that the plaintiff did not attempt to board the car in question after it had started and while moving; (4) that the negligence of the company in starting the car with a jerk was the proximate cause of the injuries; (5) that the negligence of the

company was the proximate cause of plaintiff's injuries; (6) that the plaintiff was free from contributory negligence; (7) that the plaintiff did not execute and deliver to the defendant a release and satisfaction in writing for all personal injuries and damages to her clothing in full for the sum of $210; (8) that the plaintiff did not know before she cashed the check that it was in full settlement of her claim against the defendant.

Upon the receipt of the verdict the trial court made in substance the following findings:

"The plaintiff was induced by the claim agent by reason of his falsely representing that she would be defeated in a case for her personal injuries, and that the $210 paid was in the nature of a gift and at least not to cover any claim made by her except for loss or damage to personal property, and that it was a mere receipt, and that he substantially kept her from reading it by covering it with his hand, and by stating to her that if she could not trust him he could not trust her."

The circuit court thereupon filed a written opinion wherein it held and found that, because of manifest prejudicial error in the trial of the action in the civil court, the defendant has not had a fair trial thereof in said court, and that substantial justice cannot otherwise be done than by reversing the judgment of the civil court and ordering a new trial. The judgment of the civil court was thereupon reversed and a new trial ordered.

For the appellant there was a brief by *Cannon, Waldron & Schweichler* of Milwaukee, attorneys, and *M. L. Lueck* of Beaver Dam, of counsel, and oral argument by *Mr. Lueck.*

*Samuel H. Cady* of Milwaukee, for the respondent.

Doerfler, J. We have set out in considerable detail the evidence with respect to the happening of the injury, mainly for the purpose of showing the merits of plaintiff's

case on that branch of the controversy, for in order to satis-factorily determine the question as to whether the alleged settlement made with the plaintiff was induced by fraud the evidence on the merits becomes a vital factor. Com-promise settlements are greatly favored in the law, and when made, particularly when evidenced by writings signed by the claimant, cannot be impeached on the ground of fraud or mistake unless the evidence clearly and convincingly, beyond reasonable controversy, establishes such mistake or fraud. *Rayborn v. Galena I. W. Co.* 159 Wis. 164, 169, 149 N. W. 701; *Schweikert v. John R. Davis L. Co.* 147 Wis. 242, 133 N. W. 136; *Kenese v. Cudahy Bros. Co.* 167 Wis. 378, 381, 167 N. W. 750; *Bessey v. M., St. P. & S. S. M. R. Co.* 154 Wis. 334, 141 N. W. 244.

True, the burden of proof on a settlement of this kind is upon the defendant; but when a proper release, duly exe-cuted and signed, has been shown by the defendant, such settlement has not only been presumptively shown, but can only be overcome by evidence in the case on the part of the plaintiff which, as above stated, is clear, satisfactory, and convincing beyond reasonable controversy.

It appears that the plaintiff sustained substantial injuries, for which the jury assessed damages in the sum of $1,500. The amount paid in the settlement, therefore, appears not to be reasonably commensurate with the actual damages. In determining what would be a reasonable settlement under the circumstances we must consider not only the actual damages sustained, but, among other things, the reasonable probability of plaintiff's ultimate success based upon the merits of the case. A careful analysis of the evidence clearly discloses that plaintiff's case has no support in the evidence, excepting only by her unsupported and highly improbable version. All the surrounding facts and circumstances and the physical facts in the case, which to a large measure are controlling in every personal-injury case, refute her state-ments. On the morning in question, according to her own

statement, plaintiff left her home ten minutes after the usual hour in order to board this 7:45 train. When she left the street car at Reed street and National avenue, her companion, Sullivan, remarked that it was late and that they would have to hurry for the train. The train officials and other employees of the company clearly testified that, when the signal was given for the train to start, all of the passengers had boarded the train. Sullivan, plaintiff's companion, testified that they ran from Reed street and National avenue to the station and hurried up the flight of stairs in order to reach the platform. · At least three disinterested witnesses, employees of the Newport Chemical Company, including Sullivan, testified that when plaintiff attempted to board the train the same was moving. There is convincing evidence on the part of the railway company's employees and of the other witnesses that when plaintiff attempted to board the train she endeavored to run along with the moving train and that the train was going somewhat faster than plaintiff, and that in an effort to catch the hand-rail she was unbalanced and thrown to the platform. Such evidence, it appears, is in harmony with the physical facts. Under these circumstances we are fully convinced that plaintiff's version as to the reasonable probability of the accident having happened in the manner in which it is claimed by the plaintiff is barely credible, and we are inclined to the opinion that if the case had been presented to this court on that phase alone we could not, in accordance with the prior rulings of this court, permit the judgment of the civil court to stand.

From what has been said, we therefore hold that when the plaintiff presented herself at the office of the claim agent of the company at the time when the alleged settlement was made, she had, to say the least, an extremely doubtful cause as far as legal liability of the company is concerned. Plaintiff, being an intelligent young lady twenty-four years of age,

Hanley v. Hines, 176 Wis. 252.

and having occupied for at least seven years of her life important positions of responsibility, the performance of which requires intelligence and aptness, and being fully able to read, write, and understand the English language, stands in a position before this court entirely different from the· average person claiming relief on account of fraud in the execution of a release. In many of the cases the claimants are foreigners, unable to read, write, or understand the English language, and thus afford an opportunity for effective fraudulent practices. In other cases advantage is taken of the claimant by reason of pain, suffering, and disability resulting from the injuries, thus disqualifying the claimant, to a large extent, from forming a rational judgment and from exercising that degree of care which a normal person would exercise under the same circumstances. None of these conditions were present in the instant case.

In *Bessey v. M., St. P. & S. S. M. R. Co.* 154 Wis. 334, 141 N. W. 244, where a settlement was made with the plaintiff for rather serious personal injuries for a trifling sum, the plaintiff charged that it was represented to him that the amount paid was for wages and that the writing which he signed was merely a receipt for such wages, and where it also appeared that at the time of the execution of the release the plaintiff, by reason of pain and suffering, was unable to clearly comprehend and understand the transaction, this court reversed the judgment of the circuit court, and in its opinion used the following language:

"These evidentiary facts and many of the accompanying circumstances, together with the plaintiff's conduct in the matter, make it clear that he was not misled nor deceived into signing the release under the belief that it was a mere receipt for two months' wages. The evidence falls far short of the legal requirements to impeach the formal written release. In probative force it is not of such weight and credibility as to constitute clear and convincing proof beyond reasonable controversy of the alleged fraud in pro-

curing plaintiff's signature to the release, and therefore as a matter of law does not sustain the finding of the jury on this question."

In the case of *Kenese v. Cudahy Bros. Co.* 167 Wis. 378, 167 N. W. 750, this court refused to sustain the findings of the jury that the release was obtained by fraud, and in its opinion says:

"There is no dispute but that the plaintiff signed the release, but he avers that he signed it under the belief that he was signing a receipt for $50 which defendant offered to pay him as wages.    Plaintiff is unable to understand, speak, read, or write English; he denies that he and Daly, defendant's manager, had any negotiation of settlement before the paper was signed; he states that the contents of the paper were not translated to him by Dr. Junge, his attending physician at the hospital where the paper was signed; that it was not explained to him; that he did not ask the doctor to translate it; that he did not know it was a release, and that he did not know that he had a claim against the defendant."

In this case the court further said:

"The record fails to show the quantum and character of evidence which is required in order to find that the fraud charged has been established by clear, satisfactory, and convincing evidence."

The case at bar is infinitely stronger, from the standpoint of the defendant, than any of the cases above referred to, and in fact it might truthfully be said, stronger than any of the cases in our Reports.    Plaintiff testified that she could have read the release if she had desired; in fact, when the duplicate was handed to her for signature, no effort whatever was made by the claim agent to obstruct her view. She received the check, which she was fully able to understand and had ample opportunity to read, and took it, unaccompanied, from the claim agent's office to the office of the railway company and had it cashed.    This check on its face contained a provision which informed her that it was in full payment not only of her damage to and loss of per-

sonal property, but in full satisfaction and release of her claim for personal injuries. Taking the plaintiff's statement as true, that the claim agent placed his hand on one of the releases so as to prevent her from reading it, such fact at least would have put the ordinary person on suspicion, and would have induced her to read the contents of the check while she was alone and when she had ample opportunity so to do.

Prior to the time plaintiff called on defendant's claim agent she had a conference with her brother, who was a railroad employee, and he advised her that if the offer of settlement was not satisfactory she could refuse to accept the same and then sue for damages.

The entire case is so shrouded in improbabilities, so contrary to human reason, and so opposed to the physical facts, that the circuit court should have reversed the judgment of the civil court and dismissed the complaint.

Under the circumstances, with the view that we have thus expressed, it would be merely an idle ceremony to affirm the order of the court below. In accordance with our view, therefore, we direct that the judgment of the civil court should be reversed, and the cause remanded with instructions to the circuit court to dismiss the plaintiff's complaint, with costs.

*By the Court.*—It is so ordered.