KNICKERBOCKER, Appellant, vs. BEAUDETTE GARAGE COMPANY, Respondent.

*May 11—June 21, 1926.*

*Pleading: Amendments during trial: Functions of courts: To afford suitor remedy conformably to law: Coerced settlements: Abuse of discretion: Appeal: Prejudicial error: Remarks of court and counsel that case should be settled.*

1. The allowance of an amendment of a counterclaim during the trial, and a year after service of a verified answer and bill of particulars, without showing reason for the delay to set up different and additional items, and changing defendant's attitude from admitting liability to plaintiff to asserting a substantial liability from him, is *held* an improper exercise of the discretion of the court. p. 478.

2. A statement by the court in the presence of the jury that it had made ineffectual attempts to have the suit settled—a matter not in evidence and having no place before the jury,— coupled with a statement by defendant's counsel as to his willingness and offer to settle, is improper and prejudicial. p. 477.

3. Courts are instituted and maintained in order that every person may assert the right secured to him under the constitution (sec. 9, art. I) to a complete remedy, conformably to law, and without enforced waiver of any part of a just demand or defense. While efforts of attorneys and trial courts toward amicable adjustments are heartily approved by this court, it is no part of the judicial function to coerce settlements or to exalt the idea of disposing of litigated matters above the constitutional rights of any suitor. pp. 480, 481.

APPEAL from a judgment of the circuit court for Washington county: C. M. DAVISON, Circuit Judge. *Reversed.*

Plaintiff leased the first story and basement of his building in Hartford to the defendant and its predecessor since February, 1917, by written lease and written renewals thereof, one such at a monthly rental of $135 in December, 1922, for the period expiring February 1, 1924.

After negotiations for a further extension of the lease plaintiff notified defendant by letter September 22, 1923, of his intention to take over the property on said February 1st. Defendant, being unable to arrange for other quarters, remained in possession, plaintiff insisting on an increased monthly rent of $150 in advance and upon payment of charges he claimed to have against the defendant covering some considerable period of time and aggregating $96.87. The defendant sent a check for the February rent. This was returned by plaintiff, demanding the settlement of his account and the execution of a written lease with a definite period for surrender. A check was then given to plaintiff for such claim and a written lease signed providing for the vacation of the premises April 30th. The April rent was not paid and plaintiff commenced this action April 17, 1924.

Defendant in verified answer on May 5th admitted the obligation for the rent and counterclaimed for work, labor, and material to the amount of $142 in some seven items; offering plaintiff judgment for the $8 difference with interest and costs; and demanding that plaintiff have judgment for said difference, and, if its offer be refused, then for its costs against plaintiff. Upon demand a verified bill of particulars showing the dates of the various items of such counterclaim was made in September, 1924, by the president of the defendant. Certain of such items were for repair work on machinery done in 1920 and 1921; one for wiring, painting, and repairing the garage sign in 1923; one of November 29, 1922, was for cleaning water out of the basement, $2; and one for pipe and labor placed at the basement door to avoid the flooding of the basement was for $37, of November 17, 1918.

To this counterclaim plaintiff replied, among other things asserting a full and complete settlement in February, 1924, by the payment of the $96.87 above recited.

Upon the trial in April, 1925, defendant waived all its claim to the several items of its counterclaim other than that of the $2 and the $37 respectively, and testimony was had as to those items. Later on in the midst of the trial defendant asked leave to amend the counterclaim by alleging for loss by water flooding the basement three new items: on steel of $75 to $100; on tires of $30; and the making of racks to carry said tires of $15; and increased the item of $2 for removing water from the basement to $90 or $125. Such amended counterclaim then aggregated $247 to $317. Over plaintiff's objection such amendment was allowed.

Plaintiff proposed certain amendments to the reporter's transcript prior to proposing a bill of exceptions as to certain matters alleged to have occurred during the conduct of the trial, such amendments being marked "Not true," and refused by the trial court. The trial judge also incorporated

in the bill of exceptions a statement by him as to his efforts
to settle the cause and statements to him by plaintiff's at-
torney in chambers and as to proceedings during the argu-
ment to the jury. The jury made a finding in favor of de-
fendant for $75 damages, which amounted to assessing
such at $225, allowing the conceded rent of $150. From
judgment upon such verdict plaintiff appeals.

The cause was submitted for the appellant on the brief of
*J. C. Russell* of Hartford, and for the respondent on that of
*Sawyer & Gale* of Hartford.

ESCHWEILER, J.    In the hearing of the jury the trial
court made comments to the effect that he had twice tried to
settle the case; that it was only a $39 lawsuit; that it was
costing the county $200 a day to try it; that it can be set-
tled for $125, $135, $15 difference; that he is going to
let the jury know how you (referring to both counsel)
stand; "That is my right. That is my privilege;" that he
had done his best to settle it and neither attorney will settle
it; that both are making asses of themselves.

Defendant's counsel then stated:   "We were perfectly
willing to settle. We made the offer."

During the argument by plaintiff's counsel to the jury
the trial court characterized the argument being made with
reference to the amending of the counterclaim as mere petti-
fogging; refused to permit counsel to further mention it,
and stated to the jury that had plaintiff's counsel made an
affidavit showing that he was taken by surprise he was en-
titled to a continuance and that it was his right to make such
an affidavit.

We feel that the plaintiff did not have the fair and im-
partial trial of the issues of this case to which he was en-
titled.

Almost a year before the trial and by verified answer,
followed by a verified bill of particulars, defendant's entire

counterclaim was stated at $142 and less than the conceded amount due for the last month's rent, and covered a period from 1918 to May 1, 1924. During this period rent had been paid monthly, and in but one instance had any deduction been made for counter charges. The verified answer not only admitted a balance due plaintiff but made an offer of judgment in plaintiff's favor. This answer was as to neither of these two matters withdrawn or modified; no showing was made by defendant or required by the court why such substantial change in defendant's attitude, from solemnly admitting a liability to plaintiff to one asserting a substantial liability from him, had not been or could not have been presented in the usual and ordinary course of procedure before trial. *Stevens v. Montfort State Bank,* 183 Wis. 621, 636, 198 N. W. 600. The situation here was quite different from the mere enlargement of an *ad damnum* clause as in *Schroeder v. Watertown,* 161 Wis. 13, 18, 152 N. W. 470.

Pleadings prepared and presented as they must be that the other party may rely upon them in preparing for and presenting his side of the case on the trial, though not conclusive on the parties, nevertheless, so far as they concede matters favorable to the adversary, are admissions against the pleader's interest and not lightly to be disregarded or set aside. *Savich v. Hines,* 174 Wis. 181, 183, 182 N. W. 924; *Tullgren v. Karger,* 173 Wis. 288, 295, 181 N. W. 232; *Knerzer v. Worthing,* 183 Wis. 39, 197 N. W. 199; *Tollefson v. Tollefson,* 171 Wis. 149, 153, 176 N. W. 879; 2 Wigmore, Evidence (2d ed.) § 1064; 14 A. L. R., note p. 36.

We are therefore constrained to hold that the permitting of the amendment in the midst of the trial to so substantially increase the items of the counterclaim was, upon the record here, unwarranted.

By this ruling we have no intention of modifying or

limiting that which has been so often said by this court as to the broad power vested by statute and decisions in trial courts for amendments of pleadings as described in *Turner Mfg. Co. v. Gmeinder,* 183 Wis. 664, 669, 198 N. W. 611, but to hold merely that on the record here presented there was an improper exercise of that discretion.

We are further satisfied that the plaintiff was prejudiced to an extent requiring a reversal of the judgment by what was said and done by the trial court in his comments before the jury as above set forth with reference to attempts at settlement.

A compromise and settlement of a dispute between parties either before or during litigation is greatly favored in the law. *Hanley v. Hines,* 176 Wis. 252, 257, 186 N. W. 602; *Kessler v. Leinss,* 170 Wis. 583, 587, 176 N. W. 236.

Not only have adjustments by parties in controversy consenting to submit such to other persons or tribunals than those provided through the judiciary been favored in the law, but such method of arbitration or conciliation was recognized at common law and by constitutional and legislative provisions in this state.

In the Territorial Statutes of 1838 and 1839 at p. 279, and again in the revision of the State Statutes in 1858, found there as ch. 131, now ch. 298, ample provisions were made for the submission to arbitration of substantially all controversies that might be the subject of a civil action, excepting claims as to certain interests in real estate.

Proceedings under such statutes were had in territorial days as early as 1839 (*Gear v. Bracken,* 1 Pin. 249) concerning a submission to a committee of the Galena chamber of commerce; and again in *Slocum v. Damon,* 1 Pin. 520, concerning damages done by a horse. That independent of such statute a parol submission and award is binding on the parties as at common law was held in *Winne v. Elderkin,* 2 Pin. 248 (1 Chand. 219). Such an oral submission

was before this court as early as 1853 in *Gibbs v. Holcomb,* 1 Wis. 23; and the distinction between a statutory and a common-law submission and award pointed out in *Allen v. Chase,* 3 Wis. 249. Such method of adjustment and conciliation has been consistently, though perhaps not frequently, resorted to ever since, as may be seen from the cases cited in Wisconsin Annotations and as late as the case of *Rottman v. Toft,* 187 Wis. 558, 204 N. W. 585.

Sec. 16, art. VII, Const., gives express power to the legislature to provide separate and distinct tribunals of conciliation, and such may be established in every nook and corner of the state, for, as there stated, they may be established in and for any township; and they may be given the power, upon written consent, to render binding judgments.

This provision of the constitution as to tribunals of conciliation and the fact that no serious effort has been made to establish such specific tribunal of conciliation was dwelt upon in an address by the late Mr. Chief Justice WINSLOW before the Bar Association in 1914 (Vol. 10 State Bar Association Reports, p. 206). Since that time and by ch. 530 of the Laws of 1919, sec. 104.13, Stats. (formerly sec. 1729*t*), there has been created a tribunal of conciliation to consider disputes concerning hours and conditions of labor. But such has been the only addition to the statutes on the subject.

Though conciliation, settlement, and arbitration between parties is pleasing in the eye of the law, nevertheless our courts are instituted and maintained in order that the mandate of sec. 9 of art. I in the Bill of Rights of our constitution may be made manifest. By this article every person is entitled to a remedy in the law for injuries or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws. A suitor, therefore,

may properly insist upon a complete remedy, and is clearly within his constitutional rights in refusing, for any reason, to waive any part of his just demand or defense. That in obtaining such relief the amount involved is far less than the cost to the state or community in awarding it to him is not and should not be permitted to influence trial courts and juries in considering the merits of the issue. It is no part of the judicial function to coerce a settlement; to exalt the idea of thereby disposing of matters in litigation above the constitutional purposes for which our courts are created and maintained; to punish by reprimand or otherwise a party who rejects a suggestion for settlement and insists on his constitutional right of obtaining a complete remedy, conformably to our laws.

We heartily approve of efforts made by attorneys, and even suggestions to that end by trial courts, to dispose of disputes by amicable adjustment and settlement rather than submit the parties to more or less protracted and expensive litigation. Such efforts are within one of the primary duties and obligations of attorneys, who, on now being admitted to practice as such in the courts of this state, are required, under the statutory oath (which adds nothing in effect to those which were the clear and undoubted duties and obligations of attorneys from time immemorial), to say, among other things, as follows: "I will not counsel or maintain any suit or proceeding which shall appear to me to be unjust, or any defense, except such as I believe to be honestly debatable under the law of the land." Attorneys in entering upon the trial of a case are entitled to the presumption, before court and jury, that they have kept such particular obligations, and they and their clients ought not to be deprived of such presumption without a satisfactory showing that such has been disregarded. We cannot refrain from saying, in view of the unfortunate record here presented, that we find no sufficient foundation for a conclusion that

Knickerbocker v. Beaudette Garage Co. 190 Wis. 474.

there was any dereliction of such duties by the attorneys in this case.

Furthermore, there was no evidence in the record before the jury that attempts at settlement had been made nor of any proposed terms of such. All references to such were therefore pure interjections by the trial judge. The facts that any settlement had been suggested or any proposed terms thereof are facts deemed privileged; are not admissible in evidence, and have no place before a jury in the trial of a lawsuit. *John E. DeWolf Co. v. Harvey,* 161 Wis. 535, 541, 154 N. W. 988; *Grebenstein v. Stone & Webster E. Co.* 205 Mass. 431, 438, 91 N. E. 411; *Garber v. Levine,* 250 Mass. 485, 490, 146 N. E. 21; 2 Jones, Evidence (3d ed.) § 291.

The very evident unfavorable light in which plaintiff and his counsel were placed before the jury by the oft repeated remarks of the trial court on this matter of settlement, coupled with the statement of defendant's counsel as to defendant's willingness and offer to settle, cannot, in view of the entire record, but have seriously affected the jury in its decision. Such remarks and attitude of the trial court were improper, prejudicial, and reversible error.

In consideration of the record in this case we have determined to remand it to the court below and to there allow the plaintiff to take judgment for the conceded amount of the rent less the $39, the amount asserted in the original counterclaim, or, if plaintiff does not so elect, that then he shall have a new trial.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings in accordance with this opinion.