McCoy, by guardian *ad litem*, Appellant, vs. Kenosha County, Respondent.

McCoy, Appellant, vs. Kenosha County, Respondent.

*February 8—March 6, 1928.*

*Municipal corporations: Liability for injuries caused by defective streets: Limit of recovery: Constitutional law: Remedy not assured where law does not afford it: Exemption of governmental body from liability in tort.*

1. In this state no liability for injuries exists against a municipality charged with the duty of maintaining its highways except and unless a statute so provides; and under sec. 81.15, Stats., the limitation of $5,000 as the maximum amount which can be recovered against a municipal corporation for injuries from a defect in a highway applies to all claims for injuries thereunder, and is not limited merely to persons whose notice of injury is defective or inaccurate. pp. 274, 276.

2. Sec. 9, art. I, Const., providing that every person is entitled to a remedy for injuries or wrongs received, does not secure to an infant injured by a defect in the highway, and to the parent of such infant, the absolute right to recover against a county for such injuries, in disregard of sec. 81.15, Stats., or of sec. 13, art. XIV, Const. pp. 276–278.

3. The words "conformably to the laws" as used in sec. 9, art. I, Const., have the same meaning as the phrase "due process of law," which relates to the established system of laws existing in the several states adopting the constitution as well as in the prior organizations from which the states were organized. p. 277.

4. Whatever may be the theoretical basis of the doctrine, the state, a county, city, or other municipal or *quasi*-municipal corporation is exempt from liability in the performance of governmental functions, with the exception for liability for negligence in the performance of a function from which a revenue is received. pp. 279, 280.

Appeals from judgments of the circuit court for Racine county: E. T. Fairchild, Judge. *Affirmed.*

These two actions were commenced December 21, 1923, to recover for injuries to the infant plaintiff by the over-

turning of a truck on a highway in defendant county on August 19, 1922, and for the consequent financial damage to the plaintiff father.

The two cases were tried and brought here on appeal (188 Wis. 512, 205 N. W. 420) and retried in May, 1926, and judgment entered for the infant plaintiff for $5,000, and the father's complaint dismissed by respective judgments in May, 1927, from which the plaintiffs appeal.

The infant plaintiff was very severely and permanently injured because of a defect in the highway maintained by defendant, and his damages were assessed by the jury at $17,000 on the first trial and $35,000 on the trial now before us.

The damages of the plaintiff father were assessed by direction of the court at the sum of $1,029.35, being the amount of actual expenses incurred by him as parent in the care and treatment of the infant plaintiff.

*Richard J. Hennessey* and *Vincent D. Hennessey,* both of Milwaukee, for the appellants.

For the respondent there was a brief by *Lewis W. Powell,* district attorney of Kenosha county, and *Robert V. Baker* of Kenosha, of counsel, and oral argument by *John A. Kennedy,* assistant district attorney.

ESCHWEILER, J.    It is frankly conceded by appellants' counsel in the able and interesting brief and argument here presented that it has been uniformly heretofore held by this court that no liability exists for injuries against a municipality charged with the duty of maintaining its highways except and unless a statute so provides.

Such statute so far as deemed here material and the one upon which the rulings of the court below was made reads:

"Section 81.15 (formerly sec. 1339). If any damage shall happen to any person, his team, carriage or other property by reason of the insufficiency or want of repairs of any bridge, sluiceway or road in any town, city, or vil-

lage, the person sustaining such damage shall have a right to sue for and recover the same against any such town, city or·village, provided, however, that no action shall be maintained by a husband on account of injuries received by the wife, or by a parent on account of injuries received by a minor child; but if such damage shall happen by reason of the insufficiency or want of· repairs of a . . . road which any county shall have adopted as a county road and is by law bound to keep in repair, such county shall be liable therefor and the claim for damages shall be against the county. . . . No such action shall be maintained against any county, town, city or village unless within thirty days in the case of any county, town or village, and fifteen days in the case of any city, after the happening of the event causing such damage, notice in writing . . . shall be given to the county clerk of the county . . . against which damages are claimed, stating the place where such damage occurred, and describing generally the insufficiency or want of repair which occasioned it and that satisfaction therefor is claimed of such county. . . . No notice given hereunder shall be deemed insufficient or invalid solely because of any inaccuracy or failure therein in stating the time, describing the place or the insufficiency or want of repairs which caused the damage for which satisfaction is claimed, provided it shall appear that there was no intention on the part of the person giving such notice to mislead the other party and that such party was not in fact misled thereby; and provided further, that the amount recoverable by any person for any damage or injury so sustained shall in no case exceed five thousand dollars. No action shall be maintained to recover damages for injuries sustained by reason of an accumulation of snow or ice upon any bridge or highway, unless such accumulation shall have existed for three weeks."

It is undisputed and as alleged in the complaint that timely and proper notices in writing of the respective claims of the plaintiffs were given to defendant county. Appellants now contend that a proper construction of that statute, considering its specific language, grammatical construction, and the history of its various changes since its first appearance as sec. 103, ch. 16, R. S. 1849, requires a holding that 'the

$5,000 limitation upon the amount to be recovered is applicable only to the class of cases in which a defective or inaccurate notice of the injury has been served, and not to a case, such as here, where a complete, statutory notice was given; in other words, that as a sort of penalty to those whose notice of injury is defective, such injured persons are limited in recovery to $5,000; and that those who give proper notice are entitled to recover the full amount of their assessed damages; those who give no notice cannot recover anything.

We shall not discuss in detail the arguments upon which such contention is made, but content ourselves with saying that we cannot accept such suggested construction and feel that the statute as it now stands is to be treated as a whole, and that it plainly provides that $5,000 is the maximum recovery that may be thereunder received.

The main contention, however, upon which this appeal is brought is, in substance, that there is secured by our state constitution to persons such as the plaintiff infant and the plaintiff parent, absolute rights to recover against any one causing by negligence such respective injuries. This argument is based fundamentally upon sec. 9, art. I, Const., which reads:

"Every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive in his person, property or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws."

This, it is now asserted, was a gift of, a creation of, or a recognition of rights to a certain remedy for all injuries or wrongs to one's person, property, or character instead of being merely a solemn assurance that, conformably to the laws, a person should have his remedy for such wrongs or injuries as were, at the time of its adoption, recognized by

the common law, or should thereafter be recognized, as permitting recovery in actions at law or proceedings in equity; and this assertion is made even in view of the provision in the constitution, sec. 13, art. XIV, for continuing the common law as in force at that time.

To hold, as now argued by appellants, that there is shown the desire by the founders of this commonwealth, through the adoption of its constitution, to sweep away all the old doctrines and previously recognized limitations upon the so-called natural rights of the individual, as such limitations had been found in the old world and in this country, prior to its adoption, would indeed effect quite a revolution in our present concepts of the rights and obligations of individuals to each other, and of the state and its agencies towards the individual. If appellants' position is sound, namely, that it was intended thereby to put it beyond the power of the legislature to deprive individuals, situated as were the two plaintiffs here, of rights to recover against municipal corporations when acting as agents or arms of the state, then the result of much legislative strife and a long unbroken line of solemn judicial decisions would all have to be thrown into the discard.

We cannot overlook the words "conformably to the laws" in this very provision of the constitution so relied upon by appellants. That phrase, like the one "due process of law," must mean, as the latter phrase has repeatedly been held to mean, to relate to a recognized, long established system of laws existing in the several states adopting the constitution as well as in the prior organizations from which the states were organized. *Hurtado v. California,* 110 U. S. 516, 530, 537, 48 Sup. Ct. 111; *Holden v. Hardy,* 169 U. S. 366, 390, 18 Sup. Ct. 383.

We can find no historical support for appellants' contention. This sec. 9, art. I, does not seem to have been presented in any form to or to have been considered by our

first constitutional convention in 1846. It was presented in substantially the identical language in which it is now found and as a part of the then so-called "Bill of Rights" by a committee in the second convention which framed the constitution adopted in March, 1848. Such provision, or the subject matter thereof, does not appear to have been spoken of or debated anywhere through the proceedings of that convention or to have attracted comment or attention in the numerous newspaper articles with which the state was flooded during the time such constitution was before the people for consideration.

We started off in our legislative and judicial history with a very definite attitude that neither this particular article nor any other of our constitution had any such a sweeping away of and radical departure from many common-law principles and rules, many important ones of which, though growing up under the reigns of sovereigns, nevertheless had no connection with the rights of the sovereign and yet were more or less denials of or limitations upon what would be within the broad and general field embraced in the term "natural and proclaimed rights of the individual to life, liberty, and security in person, property, and character,"— such, for instance, as the defense of absolute or conditional privilege in slander or libel; instances of injury to feelings alone; wrongs between parent and child; mere threats; the defenses in actions for malicious prosecution; the doctrines of contributory negligence in personal injury actions as well as in master and servant cases, and of assumption of risk in the latter cases. In all of the above situations, however severe the injuries might actually have been to person, property, or character, organized society had for a long time and has continued to refuse to recognize rights to legal redress. Logically, appellants' doctrine would even sweep away or deny to the legislators the power to enact statutes of limitation, for such statutes manifestly often deny to persons a

McCoy v. Kenosha County, 195 Wis. 273.

remedy for an injury to person, property, or character; yet such legislative power has been recognized without question (see *Pritchard v. Howell,* 1 Wis. 131), and it is a defense which the state itself may assert (*Baxter v. State,* 10 Wis. 454).

Though the particular situation in which this argument is now urged upon us by appellants involves only the specific field of injuries caused or committed by the sovereign state itself through its accredited agents, or through those recognized agents or arms of the state for the performing of governmental functions, such as counties, cities, villages, towns, school districts, etc., and though we have recognized the emphatic protests by the forefathers, continued by their children, against special privileges (*Black v. State,* 113 Wis. 205, 218, 219, 89 N. W. 522, as quoted in *State ex rel. Milwaukee S. & I. Co. v. Railroad Comm.* 174 Wis. 458, 463, 183 N. W. 687), yet, if appellants' argument be true, and the sovereign, by reason of the radical change effected by our constitution, as they would construe it, cannot itself be relieved from liability, manifestly much less ought individuals, in the vast field instanced in the foregoing paragraph, be heard to assert the many heretofore recognized immunities from responsibility for injuries to other individuals.

We shall not undertake the tremendous task of determining upon just what theoretical basis rests this doctrine of nonliability in performance of governmental functions, either of the state itself (*Chicago, M. & St. P. R. Co. v. State,* 53 Wis. 509, 513, 10 N. W. 560; *Houston v. State,* 98 Wis. 481, 487, 74 N. W. 111, where it was accepted doctrine without discussion; *Petition of Wausau Inv. Co.* 163 Wis. 283, 290, 158 N. W. 81, where it was held that though the statute, quite general in terms, did not authorize equitable claims or for torts), or of counties, cities, and other municipal or *quasi*-municipal corporations, the cases so holding as to such being so familiar as to need no citation and

too numerous to be here inserted.   We should have to wander far afield and browse upon much musty learning to decide whether it was the suggested theory that the state, being the sole sovereign (including the flattering unction that we sometimes take unto ourselves that we, the people, are the state), and that a sovereign, like the king of old, can do no wrong, and that therefore, there being no wrong, there is nothing to be redressed; or upon what is the more logical theory that judicial machinery, being a creation of the state, could not presume to exercise jurisdiction or control over the state—its master and creator—except upon the express consent of such creator; or again, upon the suggested theory of the possible reluctance of the taxpaying forefathers who framed our government, or even of our present-day taxpaying legislators, to add such a wide field of liability to the state and municipal taxes.   Whatever its origin, the doctrine of such exemption, except by statute, has been heretofore the unshaken doctrine in this state and needs no demonstration.

Just such a contention as appellants now present was made and denied in 1908 in *Daniels v. Racine,* 98 Wis. 649, 74 N. W. 553.

Similar appeals for such a radical change have been made elsewhere.   In 1919 an attack was launched upon this doctrine of immunity in the performance of governmental functions in the case of *Fowler v. Cleveland,* 100 Ohio St. 158, 126 N. E. 72, 9 A. L. R. 131, and the former decisions of that court were overruled and a new doctrine declared making a municipality liable for a death caused by the negligent driving of its motor hose truck.   That decision, to which but one Justice dissented, was squarely placed upon their provision of the constitution, substantially the same as our sec. 9, art. I, *supra;* and WANAMAKER, J., in a hearty concurring opinion, dwelt upon the wholesale, present-day destruction of the old autocratic forms of government and gave

many reasons for his concurrence. In December, 1922, however, *Aldrich v. Youngstown,* 106 Ohio St. 342, 140 N. E. 164, involving an injury by a police patrol wagon, expressly overruled the *Fowler Case, supra,* and reinstated the doctrine of the former Ohio cases of nonliability. The opinion was written by JONES, J., the dissenting Justice in the *Fowler Case,* and Justice WANAMAKER alone now dissented. That court has since remained steadfast to the old doctrine as shown by its decision in 1927 (*Wooster v. Arbenz,* 116 Ohio St. 281, 156 N. E. 210), where liability was denied for an injury resulting from a negligently driven truck hauling cinders for street repairs.

Florida, in 1922, in *Kaufman v. Tallahassee,* 84 Fla. 634, 94 South. 697, 30 A. L. R. 471, involving injury from a fire truck in a city under the commission form of government, citing and relying only upon the *Fowler Case, supra,* followed that decision in sustaining liability. And in 1924, in *Maxwell v. Miami,* 87 Fla. 107, 100 South. 147, again so ruled.

The following recent cases are cited as examples of the consideration that is being given to this question of governmental nonliability: *Griffith v. Butte,* 72 Mont. 552, 234 Pac. 829 (March, 1925), corporate liability sustained for injury from street-sprinkler truck; *Pass Christian v. Fernandez,* 100 Miss. 76, 56 South. 329 (Oct. 1911), 39 L. R. A. N. S. 649, a garbage-truck case, citing the *Fowler Case* but not the case overruling it and upholding liability; *Rollow v. Ogden City,* 66 Utah, 475, 243 Pac. 791 (1926), where liability was upheld for injury from a city vehicle striking a loose street marker (but such a liability could be upheld under our statute) ; *Burton v. Salt Lake City,* 67 Utah, ——, 253 Pac. 443 (Nov. 1926), upholding liability for injury arising from carelessness in maintaining a bath house and swimming pool, but so holding upon the theory that it was being operated in a private rather than governmental capacity of the city, and

citing, among other cases, *Nemet v. Kenosha,* 169 Wis. 379, 383, 172 N. W. 711; *Gensch v. Milwaukee,* 179 Wis. 95, 190 N. W. 843, holding *contra.*

In *Ramirez v. Cheyenne,* 34 Wyo. 67, 241 Pac. 710 (Dec. 1925), the general rule of nonliability of municipalities was recognized, but liability was there sustained for an injury received on playgrounds because held to be a situation where the city was acting as a substitute for a charitable or benevolent body performing public services, and citing the *Fowler Case* and its overruling. In *Opitz v. New Castle,* 35 Wyo. 358, 249 Pac. 799 (Oct. 1926), liability was sustained against a town for a highway injury due to lack of proper danger signals, although there was no statute expressly imposing such liability.

In *Strickfaden v. Green Creek Highway Dist.* 42 Idaho, 738, 248 Pac. 456, 49 A. L. R. 1057 (July, 1926), the doctrine that the state, and the county as a *quasi*-municipal corporation, are not liable in the absence of statute, holding, however, that even in the absence of statute, the municipality, in the care and maintenance of its streets, is performing a ministerial or private duty and may therefore incur liability.

On the other hand, in *Jones v. Phœnix,* 29 Ariz. 181, 239 Pac. 1030 (Oct. 1925), the Ohio and Florida cases *supra* are cited and held to be contrary to the overwhelming weight of authority, and liability of the city denied for negligence in driving a garbage truck. In *Bradley v. Oskaloosa,* 193 Iowa, 1072, 188 N. W. 896 (June, 1922), the *Fowler Case* and others were considered and liability of a municipality for injury by its fire engine was denied; and again, in *Mocha v. Cedar Rapids,* 204 Iowa, ——, 214 N. W. 587 (July, 1927), liability for negligence in conducting a bathing beach was denied.

In *Krutili v. Board of Education,* 99 W. Va. 466, 129 S. E. 486 (Sept. 1925), a school district was held not liable

for acts of negligence; and in New York, *Herman v. Board of Education,* 234 N. Y. 196, 137 N. E. 24, 24 A. L. R. 1065 (Oct. 1922), the general rule of nonliability for negligent acts of employees of a school board in the performance of its functions was held not to create a liability, but, for the direct proceeding of the board itself in this case furnishing defective machinery to a manual training school, liability was upheld.   This latter holding would be just the opposite to what this court recently held in the case of *Sullivan v. School District,* 179 Wis. 502, 503, 191 N. W. 1020.

The same principle of nonliability in the performance of governmental functions is illustrated in the cases holding a city not responsible for the loss of buildings destroyed by the fire department in order to prevent the spreading of a conflagration, and which was ruled in *Bowditch v. Boston,* 101 U. S. 16, as being based upon the doctrine of the common law (p. 19).   This latter statement, however, has been questioned as possibly standing more upon tradition than upon principle in *Penn. Coal Co. v. Mahon,* 260 U. S. 393, 396, 43 Sup. Ct. 158; *Omnia Co. v. U. S.* 261 U. S. 502, 508, 43 Sup. Ct. 437.

The generally recognized doctrine in this state and elsewhere of liability of municipalities for negligence in performance of a function partly governmental but from which a revenue is received, as in the case of waterworks, etc., though perhaps a distinction more of judicial than legislative recognition or creation, is of course upon the idea that such municipality is thereby stepping outside of a governmental and into a field of private enterprise, and therefore has no material bearing on this question.

This court has recently and frequently asserted the importance and value to the individual of this very provision, sec. 9, art. I, Const., *supra,* and that it is not to be slighted or minimized; as, for instance, in *Will of Keenan,* 188 Wis. 163, 176, 205 N. W. 1001; *Knickerbocker v. Beaudette G.*

*Co.* 190 Wis. 474, 480, 209 N. W. 763; *New York Life Ins. Co. v. State,* 192 Wis. 404, 412, 211 N. W. 288, 212 N. W. 801; but nothing there said, or in any of our former opinions cited or found, is there anything indicating that we have swerved from the doctrine that many important rights of action are of legislative creation, and the corollary that that which the legislature may give or create it may curtail, extend, or take away. *Daniels v. Racine,* 98 Wis. 649, 74 N. W. 553. The extent and scope of legislative power to broaden out or limit the field within which legal redress may be had is well illustrated in a case decided January 10, 1927, *James-Dickinson Co. v. Harvey,* 273 U. S. 119, 47 Sup. Ct. 308, where a judgment was upheld in an action in Illinois upon a Texas statute permitting recovery upon a false promise of future action (p. 123).

This court has expressly held that liability of municipalities for injuries on defective highways is entirely statutory (*Hogan v. Beloit,* 175 Wis. 199, 202, 184 N. W. 687), and, therefore, for all these reasons we do not deem it within our present province to either command or condemn the rule so steadfastly upheld by this court and recognized by the overwhelming authorities elsewhere. The challenge to it must be made to the legislature as it often has been in the past, with the prior results of but slow and slight changes by that body,—sometimes a broadening and sometimes a narrowing of the field of municipal liability, as well instanced in the statute here in question, which in 1849, *supra,* referred to towns only (liabilities of cities being covered by their respective charters) and had no limitation as to amount; but the number of lawsuits afterwards evidently induced the legislature to materially lessen them by providing that for injuries caused by ice and snow such defects must have lasted at least three weeks.

That the present case presents from its distressing facts an eloquent appeal, enforced by able argument, for a change,

cannot do more or other than to make it a painful, though necessary, duty for us to uphold the law as we find it to be, often far away from what we, as individuals, might wish it were.

We must therefore hold that the trial court was bound to rule as he did rule.

*By the Court.*—Judgments affirmed.