Beverly STANHOPE, Plaintiff-Appellant and Cross-Respondent: Harley STANHOPE, Plaintiff, v. BROWN COUNTY, and another, Defendants-Respondents, Third-Party Plaintiffs and Cross-Appellants: SOLOMON, Third-Party Defendant and Cross-Appellant.

Supreme Court

*No. 76–151. Argued February 27, 1979.—*
*Decided June 29, 1979.*
(Also reported in 280 N.W.2d 711.)

826

For the appellant there were briefs by *David J. Condon* and *Condon & Hanaway, Ltd.,* of Green Bay, and oral argument by *David J. Condon.*

For the respondents there were briefs by *Lloyd J. Planert* and *Welsh, Trowbridge, Planert & Schaefer, S.C.,* of Green Bay, and oral argument by *Lloyd J. Planert.*

SHIRLEY S. ABRAHAMSON, J. The trial court entered judgment for damages in the amount of $25,000 in favor of Beverly Stanhope (Stanhope) against de-

fendants Brown County and Continental Casualty Insurance Company (Continental), Brown County's liability insurer, for injuries Stanhope suffered when an automobile in which she was a passenger went out of control on a Brown County highway. Stanhope appeals from that portion of the judgment limiting to $25,000 the damages she may recover from Brown County and Continental. Brown County and Continental cross-appeal from that portion of the judgment awarding any damages to Stanhope and from the trial court's order denying motions after verdict. We modify the trial court's judgment to award Stanhope damages against Brown County and Continental in excess of $25,000 up to Continental's policy limits and affirm the judgment as modified. We further affirm the orders from which Brown County and Continental cross-appeal.

I.

On the evening of December 6, 1969, Gordon Solomon drove his 1968 Chevrolet, which was occupied by his wife Janice Solomon and Beverly and Harley Stanhope, out of the parking lot at the Brown County Airport and negotiated an S-curve leading into County Trunk Highway IA. The car skidded off Highway IA, turned over several times and came to rest upside down. Gordon Solomon and Beverly Stanhope were injured seriously.

In their complaint Harley and Beverly Stanhope alleged causal negligence on the part of Brown County in the design, construction and maintenance of the airport road and highway, and further alleged that Continental, Brown County's insurer, was liable to the Stanhopes for damages up to $100,000, the limit of the policy, and was a proper party to the action.

Brown County and Continental in their answer denied causal negligence by Brown County, alleged Stanhope's contributory negligence, and sought contribution from

Gordon Solomon and his insurer, American Family Insurance, as third-party defendants. The circuit court dismissed American Family Insurance as third-party defendant, upon American Family's payment to Stanhope of $10,000, the limit of Solomon's liability policy.

In an amended complaint and second amended complaint, the Stanhopes alleged that General Motors Corporation (GM) was causally negligent in the design, manufacture and testing of the Chevrolet in which the accident had occurred. During trial GM settled with the Stanhopes for $45,000, in return for a *Pierringer* release.[1]

In an answer to the Stanhopes' second amended complaint served on the Stanhopes on November 14, 1975, three days before the start of trial, Brown County and Continental raised for the first time the defense, under secs. 81.15[2] and 895.43, Stats.,[3] that Stanhope

---

[1] *Pierringer v. Hoger*, 21 Wis.2d 182, 124 N.W.2d 106 (1963).

[2] Sec. 81.15, Stats. 1971, provides:

"81.15 Damages caused by highway defects; liability of town and county. If damages happen to any person or his property by reason of the insufficiency or want of repairs of any highway which any town, city or village is bound to keep in repair, the person sustaining such damages shall have a right to recover the same from such town, city or village. If such damages happen by reason of the insufficiency or want of repairs of a highway which any county by law or by agreement with any town, city or village is bound to keep in repair, or which occupies any land owned and controlled by the county, the county shall be liable therefor and the claim for damages shall be against the county. If the damages happen by reason of the insufficiency or want of repairs of a bridge erected or maintained at the expense of 2 or more towns the action shall be brought against all the towns liable for the repairs of the bridge and upon recovery of judgment. the damages and costs shall be paid by such towns in the proportion in which they are liable for such repairs; and the court may direct the judgment to be collected from each town for its proportion only. No such action shall be maintained unless within 120 days after the happening of the event causing such damages,

could not recover more than $25,000 from Brown County. Over Stanhope's objection the trial court held that

notice in writing signed by the party, his agent or attorney shall be given to the county clerk of the county, a supervisor of the town, one of the trustees of the village or mayor or city clerk of the city against which damages are claimed, stating the place where such damages occurred, and describing generally the insufficiency or want of repair which occasioned it and that satisfaction therefor is claimed of such county, town, city or village. No notice given hereunder shall be deemed insufficient or invalid solely because of any inaccuracy or failure therein in stating the time, describing the place or the insufficiency or want of repairs which caused the damages for which satisfaction is claimed, if it appears that there was no intention on the part of the person giving the notice to mislead the other party and that such party was not in fact misled thereby. The amount recoverable by any person for any damages so sustained shall in no case exceed $25,000. No action shall be maintained to recover damages for injuries sustained by reason of an accumulation of snow or ice upon any bridge or highway, unless such accumulation existed for 3 weeks."

Sec. 81.15 was amended by Laws of 1977, ch. 285, but the amendment preserved the $25,000 limit on recovery for actions.

[3] In pertinent part, sec. 895.43, Stats. 1971, provides:

"895.43 Tort actions against political corporations, governmental subdivisions or agencies and officers, agents or employes; notice of injury; limitation of damages and suits. (1) No action founded on tort, except as provided in s. 345.05, shall be maintained against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or agency thereof nor against any officer, official, agent or employe of such corporation, subdivision or agency for acts done in their official capacity or in the course of their agency or employment unless within 120 days after the happening of the event causing the injury or damage or death complained of, written notice of the time, place and circumstances of the injury or damage signed by the party, his agent or attorney is served on such volunteer fire company, political corporation, governmental subdivision or agency and on the officer, official, agent or employe under s. 262.06. Failure to give the requisite notice shall not bar action on the claim if the fire company, corporation, subdivision or agency had actual notice of the damage or injury and the injured party shows to

Brown County and Continental would be permitted to raise the defense, withholding its decision as to whether the defense was applicable to the case at bar.

The jury found Gordon Solomon, Brown County, and Beverly Stanhope each causally negligent, and apportioned their causal negligence as follows: Gordon Solomon, 80.5 percent; Brown County, 16.2 percent; Beverly Stanhope, 3.3 percent. The jury determined Beverly Stanhope's damages to be $250,000, and Harley Stanhope's $20,904.74.

The trial court denied Brown County and Continental's motion for credit for the $45,000 settlement between the Stanhopes and GM. It upheld the legislative power to enact limits on recovery in secs. 81.15 and 895.43, Stats., against Stanhope's constitutional challenges, and it held that the statutory defense of limits on recovery was available to Continental as well as to Brown County and was not waived by the policy.

The trial court entered judgment against Brown County and Continental and in favor of Beverly Stanhope in the amount of $25,000, with costs and disburse-

the satisfaction of the court that the delay or failure to give the requisite notice has not been prejudicial to the defendant fire company, corporation, subdivision or agency or to the defendant officer, official, agent or employe.

"(2) The amount recoverable by any person for any damages, injuries or death in any action founded on tort against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or agency thereof and against their officers, officials, agents or employes for acts done in their official capacity or in the course of their agency or employment, whether proceeded against jointly or severally, shall not exceed $25,000. No punitive damages shall be allowed or recoverable in any such action."

Sec. 895.43 was amended by Laws of 1977, ch. 285, but the amendment preserved the $25,000 limit on recovery for actions.

Several statutes dealing with victims of governmental torts appear to provide no limits on recovery or limits higher than $25,000. *See e.g.* secs. 66.091, 895.43(5), 895.45(4), Stats.

ments.  Harley Stanhope was paid $20,214.88, the amount awarded him, and his action was dismissed in lieu of entry of judgment.  Further facts appear in the opinion.

## II.

Brown County and Continental first raised the defense of the $25,000 limitation on recovery under secs. 81.15 and 895.43, Stats., on November 14, 1975, three days before trial.  Stanhope contends that it was error for the trial court to allow the defense to be raised at that time.

The Stanhopes began the action in July 1970.  In a first amended complaint they added GM as a defendant. They served their second amended complaint on Brown County and Continental on November 20, 1972.  The second amended complaint did not differ from the initial complaint as to the allegations regarding Brown County and Continental; it alleged additional grounds for recovery against GM.  Under sec. 263.10, Stats. 1971, Brown County and Continental were required to answer or demur to the second amended complaint within twenty days after service.  If not interposed by demurrer or answer, objections to the complaint, except the objection to the jurisdiction over subject matter, are waived. Sec. 263.12, Stats. 1971.  Brown County and Continental served their answer to the second amended complaint on November 14, 1975, nearly three years after service of the amended complaint.  The only difference between this amended answer and the prior answer was the allegation of the affirmative defense of the statutory limitation on recovery.

The trial court, relying *inter alia* upon sec. 269.44, Stats. 1971, regarding amendments of pleadings, allowed Brown County and Continental to raise the statutory defense.

"Sec. 269.44 The court may, at any stage of any action or special proceeding before or after judgment, in furtherance of justice and upon such terms as may be just, amend any process, pleading or proceeding, notwithstanding it may change the action from one at law to one in equity, or from one on contract to one in tort, or vice versa; provided, the amended pleading states a cause of action arising out of the contract, transaction or occurrence or is connected with the subject of the action upon which the original pleading is based."

We have said that "sec. 269.44, Stats., should be liberally construed to permit the amendment of the pleadings so as to present the entire controversy providing the amendment does not unfairly deprive the opposing party of timely opportunity to meet the issue created by the amendment." *Wipfli v. Martin,* 34 Wis.2d 169, 174, 148 N.W.2d 674 (1967). It is within the discretion of the trial court to allow an amendment to the pleadings, and we will not reverse the trial court unless there has been a manifest abuse of discretion. *Metro. Sew. Dist. v. Chic., Milw., St. Paul & Pac. R.R. Co.,* 69 Wis.2d 387, 412, 230 N.W.2d 651 (1975).

Stanhope argues that permitting Brown County and Continental to raise the statutory defense by amendment of their answer to the second amended complaint was not "in furtherance of justice and upon such terms as are just." She grounds this argument on the theory that the defense does not go to the merits but operates to deprive the injured party of a remedy and full recovery and should not be favored.[4] We find this argument misplaced.

---

[4] Stanhope also asserts that Brown County and Continental by not moving for court permission to file the second amended answer failed to conform to the requirements of sec. 263.47, Stats. 1971, which states:

"The plaintiff and defendant, respectively, may be allowed, on motion and on such terms as may be just, to make a supplemental

Stanhope was not unfairly prejudiced by the trial court's decision to allow the statutory defense to be raised. The Stanhopes were aware of the availability of this defense well before trial and were planning to meet this defense. In their pre-trial statement dated February 11, 1971, the Stanhopes stated: "It is expected that defendants will claim that plaintiffs' total damages are limited by sec. 81.15, Stats." In their trial brief, dated November 13, 1975, the Stanhopes discussed both sec. 81.15 and sec. 895.43. In the trial brief, as in the pre-trial statement, they urged that the $25,000 limit applied separately to each of the plaintiffs and asserted the inapplicability of the statutory limits. In the trial brief they also asserted, for the first time, the invalidity of the statutes.

Thus Stanhope's pre-trial or trial strategy was not influenced by the mistaken belief that the county and insurance company were not going to assert the defense. The Stanhopes were not surprised by the revelation shortly before trial that Brown County and Continental actually intended to invoke the statutory defense. The validity and applicability of the defense were not issues before the jury, and they were not issues of law that had to be decided before submission of the case to the jury. After the jury returned its verdict, the trial court gave the parties an opportunity to brief the legal issues regarding the statutory $25,000 limit.

Under these circumstances we cannot say that the trial court abused its discretion in allowing the defense

complaint, answer or reply alleging facts material to the case occurring after the former complaint, answer or reply, or of which the party was ignorant when his former pleading was made."

But the second amended answer of Brown County and Continental alleges neither facts occurring after the former answer nor facts of which they were ignorant when the former answer was made. On its face sec. 263.47, Stats. 1971, does not apply to this answer.

to be raised. Because of this conclusion we do not consider the contention of Brown County and Continental that the trial court could take judicial notice of secs. 81.15 and 895.43, Stats., and that the defense need not be raised by answer.

## III.

Stanhope asserts that the Wisconsin legislature has established two classes of plaintiffs (victims of governmental negligence and victims of non-governmental negligence) and two classes of defendants (governmental tortfeasors and non-governmental tortfeasors). She contends that limiting the liability of governmental tortfeasors and limiting the recovery of victims of governmental tortfeasors to $25,000 as provided in secs. 81.15 and 895.43 is unconstitutional under the equal protection guarantees of the state[5] and federal constitutions[6] and under Art. I, sec. 9, Wis. Const., the "certain remedy" clause.[7]

---

[5] Wis. Const., Art. I, sec. 1: "All men are born equally free and independent, and have certain inherent rights; among these are life, liberty and the pursuit of happiness; to secure these rights, governments are instituted among men, deriving their just powers from the consent of the governed." This declaration of rights provides, *inter alia*, protection against unequal treatment by the state guaranteed by the equal protection clause of the U. S. Const. *Pauly v. Keebler*, 175 Wis. 428, 430, 431, 185 N.W. 554 (1921).

[6] U. S. Const. Amend. XIV, sec. 1, provides in part: "[N]or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

[7] Wis. Const., Art. I, sec. 9: "Every person is entitled to a certain remedy in the laws for all injuries, or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws."

We begin with the principle repeatedly stated by this court and the United States Supreme Court that all legislative acts are presumed constitutional, that a heavy burden is placed on the party challenging constitutionality, and that if any doubt exists it must be resolved in favor of the constitutionality of a statute. When the challenger asserts that a statutory classification is violative of the equal protection clause, he must prove abuse of legislative discretion beyond a reasonable doubt. *State v. Hart,* 89 Wis.2d 58, 64, 277 N.W.2d 843 (1979); *WKBH Television Inc. v. Dept. of Revenue,* 75 Wis.2d 557, 566, 250 N.W.2d 290 (1977); *State ex rel. La Follette v. Reuter,* 36 Wis.2d 96, 111, 153 N.W.2d 49 (1967).

In *Binder v. Madison,* 72 Wis.2d 613, 622, 241 N.W.2d 613 (1976), we held that the appropriate test for review of the classifications of governmental and non-governmental tortfeasors and their victims is whether there is a rational basis for the classification.[8] The United States Supreme Court described the "rational basis" test in *McGowan v. Maryland,* 366 U.S. 420, 425, 426 (1961):

[8] Stanhope, citing *Hunter v. North Mason High School,* 85 Wash.2d 810, 539 P.2d 845 (1975), urges this court to apply the stricter "fair and reasonable relationship" test, under which we would inquire whether the basis of the challenged classification bears a fair and substantial relationship to the object of the legislation. *See Royster Guano Co. v. Virginia,* 253 U. S. 412, 415 (1920); *Reed v. Reed,* 404 U. S. 71, 76 (1971); *Craig v. Boren,* 429 U. S. 190 (1976). We recognize that what is involved is a right "not only of monetary value but in many cases fundamental to the injured person's physical well-being and ability to continue to live a decent life." *Hunter v. North Mason High School,* 539 P.2d at 848. Recently the United States Supreme Court applied the rational basis test in reviewing the validity of the liability-limitation provisions for a "nuclear incident" imposed by the Price-Anderson Act. *Duke Power Co. v. Carolina Environmental Study Group, Inc.,* 438 U. S. 59, 82–84 (1978). We conclude that in re-

"[T]he Fourteenth Amendment permits the States a wide scope of discretion in enacting laws which affect some groups of citizens differently than others. The constitutional safeguard is offended only if the classification rests on grounds wholly irrelevant to the achievement of the State's objective. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it."

In *Omernik v. State*, 64 Wis.2d 6, 19, 218 N.W.2d 734 (1974), we said:

"Judicial response to a challenged legislative classification requires only that the reviewing court locate some reasonable basis for the classification made. The public policy involved is for the legislature, not the courts to determine."

Our resolution of the constitutional issue is best understood in the context of the common law and legislative history of the doctrine of governmental tort immunity. We traced the historical background of governmental tort immunity in *Holytz v. Milwaukee*, 17 Wis.2d 26, 30–31, 115 N.W.2d 618 (1962), noting that there is no general agreement as to the roots of the doctrine. Although some view the rule as an extension of the theory that "the king can do no wrong," many believe it was born of expediency. Immunity was thought necessary to protect governmental funds from depletion in payment of damage claims. Another reason advanced for the doctrine was that the wrong to the individual must be

viewing the classifications Stanhope challenges we will apply the rational basis test.

, Several courts have considered the constitutionality of notice and claims statutes treating claimants against governmental units differently from claimants against non-governmental defendants. *See Armes v. Kenosha County*, 81 Wis.2d 309, 321, n. 17, 260 N.W.2d 515 (1977).

submerged in the convenience of the public; the individual advantage must give way to the public welfare. *See Ayala v. Phil. Bd. of Pub. Ed.*, 453 Pa. 584, 305 A.2d 877 (1973). We recognized in *Holytz* that the rule of government tort immunity is probably unique as a doctrine of law in that it has been "so unanimously berated" as mistaken and unjust. Dislike of the doctrine was expressed by an increasing number of court-made exceptions to immunity, based on highly artificial distinctions, and by numerous legislative enactments authorizing governmental liability. Sec. 81.15, Stats., is an example of a legislative exception to governmental immunity. In *Holytz* we abrogated the doctrine saying "so far as governmental responsibility for torts is concerned, the rule is liability—the exception is immunity." Nevertheless we recognized that limitations on public tort responsibility continue to exist. *See* Davis, *Administrative Law*, sec. 25.11 (1958). We pointed out that *Holytz* was "not to be interpreted as imposing liability on a governmental body in the exercise of its legislative or judicial or quasi-legislative or quasi-judicial functions." We also recognized that judicial abrogation of common law immunity did not bind the legislature. "If the legislature deems it better public policy, it is, of course, free to reinstate immunity. The legislature may also impose ceilings on the amount of damages or set up administrative requirements which may be preliminary to the commencement of judicial proceedings for an alleged tort." *Holytz v. Milwaukee, supra,* 17 Wis.2d at 40.

Indeed the abrogation of common law municipal tort immunity in *Holytz* paradoxically altered the function of sec. 81.15, Stats.,[9] and similar statutory provisions

---

[9] When sec. 81.15, Stats., was enacted in 1849 (R.S. 1849, ch. 16, sec. 103) the legislature placed no limitation upon the amount of recovery:

"Sec. 103. If any damage shall happen to any person, his team, carriage, or other property, by reason of the insufficiency or want

which were in existence when *Holytz* was decided. "Before *Holytz,* liability of the municipality arose by virtue of sec. 81.15 upon the giving of notice. Since *Holytz,* liability of the municipality would exist in the absence of the statute, and that statute is a limitation upon it." *Lang v. Cumberland,* 18 Wis.2d 157, 165, 118 N.W.2d 114 (1962).

In 1963 the legislature in response to *Holytz* enacted sec. 331.43, Stats. 1963 (now sec. 895.43, Stats.), relating to actions against political corporations, governmental subdivisions or agencies and officers, agents, or employes. Laws of 1963, ch. 198. Section 331.43, Stats. 1963, provided, *inter alia,*

"(2) The amount recoverable by the person for any damages, injuries or death in any action founded on tort against any volunteer fire company organized under ch. 213, political corporation, governmental subdivision or agency thereof and against their officers, officials, agents or employes for acts done in their official capacity or in the course of their agency or employment, whether proceeded against jointly or severally, shall not

of repairs of any bridge, or sluiceway or road in any town in this state, the person sustaining such damages shall have a right to sue for and recover the same against such town, in any court having jurisdiction thereof; and if such damage shall accrue by reason of the insufficiency or want of repairs of a bridge erected or maintained at the expense of two or more towns, the suit shall be brought against all the towns liable for the repairs of the same; and upon recovery of judgment, the damages and costs shall be paid by such towns in the proportion in which they are liable for such repairs; and the court may in its discretion issue execution against each town for its proportion only."

In 1885 the legislature added that "the amount recovered by any person for such damage or injury shall in no case exceed the sum of five thousand dollars." Laws of 1885, ch. 454. This amount was raised to $10,000 (Laws of 1959, ch. 305) and to $25,000 in 1963 (Laws of 1963, ch. 435).

*See Schwartz v. City of Milwaukee,* 43 Wis.2d 119, 123, 168 N.W.2d 107 (1969); *Schwartz v. City of Milwuakee,* 54 Wis.2d 286, 288, 289, 195 N.W.2d 480 (1972).

exceed $25,000. No punitive damages shall be allowed or recoverable in any such action."

Although the legislature had enacted this 1963 statute relating to governmental liability generally, the legislature left standing sec. 81.15, Stats., which by its terms applies to damages happening by reason of the insufficiency or want of repairs of highways and bridges.

The legislative purpose of the monetary limitation on recovery in secs. 81.15 and 895.43 is not stated expressly in the statutes or in the documents regarding the legislative history of these provisions. Brown County asserts that these limitations serve a legitimate public purpose, namely to prevent the disastrous depletion of municipal treasures by payment of large damage judgments, thereby safeguarding public funds from unnecessary drains that impair government's ability to discharge public responsibility. As we noted in *Holytz*, historically this rationale has been one of the principal bases for the doctrine of governmental immunity.[10] One reason this court abrogated immunity in *Holytz* was the apparent unacceptability of this rationale.

In *Holytz* we recited numerous examples of the severe condemnation of the immunity rule by the legal community, recognizing that the entire burden of damage resulting from the tortious act of the government should not be imposed upon the injured person but should be distributed among and borne by the entire community constituting government. The abrogation of government immunity was based on the reasoning that if the government acts and causes harm, payment of claims should be viewed as a normal and proper cost of the operations of government and not as a diversion of public funds.

[10] "The immunity granted municipalities from tort liability was created by case law basically and primarily to protect public funds and property." *Marshall v. Green Bay*, 18 Wis.2d 496, 500, 118 N.W.2d 715 (1963).

Nevertheless this reasoning supporting the abrogation of government immunity does not necessarily lead to the conclusion that the government cannot limit its liability. The rationale that limited liability is needed to protect governmental functions is not entirely without pragmatic support. If public entities with substantial fiscal resources are involved the financial problem may be minimal. For smaller entities or those with more limited financial powers a judgment can have serious consequences. Van Alstyne, *Governmental Tort Liability: A Decade of Change,* 1966 U. of Ill. L.F. 919, 971, n. 365.

The legislative classification Stanhope challenges expresses a legislative balancing of two purposes: To compensate victims of government tortfeasors while at the same time protecting the public treasury.

We are unwilling to say that the legislature has no rational basis to fear that full monetary responsibility entails the risk of insolvency or intolerable tax burdens. Funds must be available in the public treasury to pay for essential governmental services; taxes must be kept at reasonable levels; it is for the legislature to choose how limited public funds will be spent. It is within the legitimate power of the legislature to take steps to preserve sufficient public funds to ensure that the government will be able to continue to provide those services which it believes benefits the citizenry. We conclude that the legislature's specification of a dollar limitation on damages recoverable allows for fiscal planning and avoids the risk of devastatingly high judgments while permitting victims of public tortfeasors to recover their losses up to that limit.

Stanhope argues that the protection of municipal funds is not a legislative purpose that can validate the distinction between victims of municipal and victims of private tortfeasors, because the county may acquire adequate liability or indemnity insurance to protect itself from large

drains on its treasury, while at the same time compensating victims of public tortfeasors more fully. Sec. 66.18, Stats., enables but does not require municipalities to purchase liability insurance. The availability of liability insurance to municipalities is not by itself a basis for holding the challenged classification invalid, however. The "rational basis" test for equal protection does not require that the legislature choose the best or wisest means to achieve its goals. *Mourning v. Family Publications Service, Inc.*, 411 U.S. 356, 377, 378 (1973). No matter how plausible are the arguments that by requiring municipal liability insurance the legislature could protect the municipal purse without placing victims of governmental tortfeasors at a disadvantage relative to victims of private tortfeasors, those arguments are nonetheless properly directed to the legislature and not to the court.

As to the specific monetary limitation on recovery we recognize that whatever figure is selected will be arbitrary in the sense that it is based on imponderables. This monetary limitation is one which the legislature determines balancing the ideal of equal justice and the need for fiscal security.[11]

Nevertheless we do not mean to imply that we accept the reasoning that because the state may choose either to maintain or waive its sovereign immunity, it is free

---

[11] "When a legal distinction is determined, as no one doubts that it may be, between night and day, childhood and maturity, or any other extremes, a point has to be fixed or a line has to be drawn, or gradually picked out by successive decisions, to mark where the change takes place. Looked at by itself without regard to the necessity behind it the line or point seems arbitrary. It might as well or nearly as well be a little more to one side or the other. But when it is seen that a line or point there must be, and that there is no mathematical or logical way of fixing it precisely, the decision of the Legislature must be accepted unless we can say that it is very wide of any reasonable mark." *Louisville Gas & Elec. Co. v. Coleman*, 277 U. S. 32, 41 (1928).

to impose whatever conditions it pleases with respect to actions against the state or any of its political subdivisions. Once sovereign immunity has been waived, legislative enactments must conform to the equal protection and due process guarantees of the state and federal constitutions. *Jenkins v. State,* 85 Wash.2d 883, 540 P2d 1363, 1368 (1975).

Argument is made that $25,000 is an unreasonably low figure and that many states have not imposed any limitation on recovery and have not experienced any fiscal difficulties. Note, *An Insurance Program to Effectuate Waiver of Sovereign Tort Immunity,* 26 U. of Fla. L. Rev. 89, 90, 91 (1973). Courts are not equipped or empowered to make investigations into the financial resources of various public bodies in Wisconsin; the coverage, policy limits and costs of available liability insurance; or the number of victims of governmental tortfeasors and a profile of the losses they have suffered. Information derived from such investigation must necessarily precede any reasoned evaluation of either a limitation on recovery or a requirement of purchase of insurance.

We cannot conclude in this case that the $25,000 cutoff point adopted by the Wisconsin legislature in secs. 81.15 and 895.43 is arbitrary or unreasonable or violates state and federal constitutional guarantees.

Stanhope also asserts that the limitation on recovery in secs. 81.15 and 895.43 violates the "certain remedy" clause, Art. I, sec. 9, Wis. Const.:

"Every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive in his person, property, or character; he ought to obtain justice freely, and without being obliged to purchase it, completely and without denial, promptly and without delay, conformably to the laws."

This court has already upheld a $5,000 limit on recovery in an earlier version of sec. 81.15 against challenge under the "certain remedy" clause. In *McCoy v. Kenosha County*, 195 Wis. 273, 218 N.W. 348, 57 A.L.R. 412 (1928), this court held that the phrase "injuries and wrongs" in the "certain remedy" clause were to be understood with reference to those injuries and wrongs for which remedies were available at common law when the constitution was adopted in 1848. In 1848 governmental bodies were immune to tort liability at common law, although the legislature could by statute make exceptions to this rule. The court therefore concluded that the "certain remedies" clause did not require that the victim of a governmental tortfeasor be allowed to recover the full amount of damages above and beyond the statutory $5,000 limit. *See also Firemen's Ins. Co. v. Washburn County*, 2 Wis.2d 214, 224, 85 N.W.2d 840 (1957); *Schwenkhoff v. Farmers Mut. Automobile Ins. Co.*, 11 Wis.2d 97, 104, 104 N.W.2d 154 (1960) (Currie, J., concurring).

We conclude that the $25,000 limit on recovery from governmental tortfeasors in secs. 81.15 and 895.43 is not invalid under Art. I, sec. 9, Wis. Const.[12]

## IV.

We next turn to Stanhope's assertion that even if the limitation on recovery in secs. 81.15 and 895.43, Stats.

[12] Stanhope also challenges the classification resulting from the limit on recovery in secs. 81.15 and 895.43, Stats. 1975, between victims of governmental tortfeasors awarded no more than $25,000 and those awarded over $25,000. Stanhope points to the fact that her husband's award of $20,214.88 in the case at bar was not reduced as a result of the statutory limitation, although hers was reduced by $206,750 or over 85 percent. We find no violation of the right to equal protection in this classification.

1971, is valid she may recover in excess of $25,000 up to Continental's policy limits.

Brown County was insured with Continental from January 1, 1967 to January 1, 1970. Stanhope's injuries were sustained on December 6, 1969, within this policy period. The insurance company's policy provides under Section I, Coverage A that "The Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury" caused by an "occurrence" but limited to $100,000 "for all damages because of bodily injuries sustained by one person as a result of any one occurrence."

Stanhope's first argument is that Brown County's mere purchase of liability insurance with limits on liability exceeding the $25,000 statutory limit is a waiver of the county's and insurer's right to invoke the statutory limit as a defense. Stanhope asks us to overrule *Sambs v. Brookfield,* 66 Wis.2d 296, 224 N.W.2d 582 (1975), in which this court held that the mere purchase by a municipality of a liability insurance policy providing coverage beyond the $25,000 limit of recovery of secs. 81.15 and 895.43, Stats., does not constitute a waiver of that statutory limit by the municipality. The policy at issue in *Sambs* provided coverage of $500,000 per person and $1,000,000 per occurrence. Unlike the policy in the instant case, the policy in *Sambs* contained no clause prohibiting the assertion of governmental immunity or the statutory liability limits as a defense to a tort action. The lack of any waiver language in the policy in *Sambs* was significant to our decision. The court determined that it was reasonable for the city to have purchased such coverage to protect itself against the possibility that the statutory limit would be held invalid. Thus under the circumstances the purchase of excess coverage is not to be construed as evidence of the intent to waive the statu-

tory limit. We said: "The total absence of any language indicating waiver of the defense leads us to conclude the defendant did not intend to waive the partial defense when it purchased the instant contract of liability insurance." *Sambs, supra,* 66 Wis.2d at 317.[13] We decline to overrule *Sambs.*

If we are unwilling to reverse *Sambs,* Stanhope then urges that we distinguish her case from *Sambs.* Included in the Brown County policy as Endorsement No. 3 is the following statement: "It is agreed that to the extent legally possible, the Company will not avail itself of the defense that the Insured is not liable because of the performance of Governmental Functions." Stanhope argues that Brown County and Continental have by the provisions of Endorsement No. 3 waived the statutory limit on recovery. Stanhope asserts that Endorsement No. 3 should be understood to refer to the defense of a $25,000 limitation on recovery under secs. 81.15 and 895.43. Brown County and Continental, on the other hand, assert that the Endorsement should be understood to refer only to the court-made defense of governmental immunity which this court abrogated in *Holytz.* The trial court held that Endorsement No. 3 did not constitute a waiver of the statutory limitation on recovery.

---

[13] The distinction between the mere purchase of insurance and the purchase of a policy which contains a specific waiver provision is a recurring theme in our cases. In *Marshall v. Green Bay,* 18 Wis.2d 496, 501, 502, 118 N.W.2d 715 (1963), we said "By the terms of the policy the city and the insurer agreed in effect to extend the coverage of the policy and to enlarge the scope of its insuring clause which a literal construction would otherwise limit to liability incurred beyond the city's immunity . . . . We do not hold, however, a municipality waives its immunity when it takes out a liability policy which does not contain the condition or agreement to refrain from raising the defense of governmental immunity."

The issue thus raised is one of the interpretation of Endorsement No. 3. As we said in *Sambs v. Brookfield, supra,* 66 Wis.2d at 317, "the intent of the parties must be determined from the four corners of the insurance policy itself."[14]

The interpretation of insurance contracts is controlled by the principles of construction of contracts in general. *Ehlers v. Colonial Penn Ins. Co.,* 81 Wis.2d 64, 259 N.W. 2d 718 (1977). Other things being equal, a construction which gives reasonable meaning to every provision of a contract is preferable to one leaving part of the language

---

[14] "The construction of an insurance policy is generally a matter of law for the court, although in a case of ambiguity where words or terms are to be construed by extrinsic evidence, the question is one for the fact-finder. The rule stated in *Thurston v. Burnett & Beaver Dam Farmers' Mut. Fire Ins. Co.,* 98 Wis. 476, 478, 479, 74 N.W. 131 (1898), was recently quoted with approval in *RTE Corp. v. Maryland Casualty Co.,* 74 Wis.2d 614, 621, 247 N.W.2d 171 (1976):

" ' ". . . The case comes clearly within the rule that where language is plain and unambiguous, the apparent import of the words must govern, and the rule that where there is no uncertainty as to the meaning of the words used in the contract, and where such uncertainty exists but there is no extrinsic evidence or circumstance bearing on the subject to be considered in determining the meaning attributed to them by the parties when the contract was made, the proper interpretation of the words and construction of the contract are solely for the court." '

"*See also Pleasure Time, Inc. v. Kuss,* 78 Wis.2d 373, 379, 254 N.W.2d 463 (1977).

"In the case at bar no extrinsic evidence was offered or introduced bearing upon the meaning of the terms of the policy The meaning of the policy was therefore a question of law to be determined by the trial court upon a consideration of the contract as a whole, and because it is a question of law, it may be redetermined independently by this court on appeal. *Zweck v. D P Way Corp.,* 70 Wis.2d 426, 435, 436, 234 N.W.2d 921 (1975)." *Kramer Bros. v. United States Fire Ins. Co.,* 89 Wis.2d 555, 561, 562, 278 N.W.2d 857 (1979).

useless or meaningless. *McCullough v. Brandt*, 34 Wis. 2d 102, 148 N.W.2d 718 (1967). This court has applied this principle specifically to insurance policies: "A construction of an insurance policy which entirely neutralizes one provision should not be adopted if the contract is susceptible of another construction which gives effect to all of its provisions and is consistent with the general intent." *Inter-Insurance Ex. v. Westchester Fire Ins. Co.*, 25 Wis.2d 100, 106, 130 N.W.2d 185 (1964). In the event of ambiguity or obscurity, the language of a policy should be construed against the insurance company which drafted the policy. *Wisconsin Builders, Inc. v. General Ins. Co. of America*, 65 Wis.2d 91, 221 N.W.2d 832 (1974). Words or phrases are ambiguous when they are reasonably or fairly susceptible to more than one construction. *Garriguenc v. Love*, 67 Wis.2d 130, 135, 226 N.W.2d 414 (1975).

Endorsement No. 3 in Brown County's liability policy with Continental must be interpreted in the light of these principles. That endorsement commits the insurer to forego "the defense that the insured is not liable because of the performance of Governmental Functions." The endorsement thus appears to waive the defense of municipal tort immunity, which under earlier Wisconsin law would have been available to the county and the insurer of the tortious conduct involved had occurred in the course of the exercise of a "governmental" and not "proprietary" function, with certain exceptions. *Holytz v. Milwaukee, supra,* 17 Wis.2d at 32, 36.

As noted above, in *Holytz* this court abrogated the court-made defense of municipal tort immunity. We stated that this defense would be available to municipalities for torts occurring before July 15, 1962, but not thereafter. *Holytz, supra,* 17 Wis.2d at 42. The policy here at issue, containing Endorsement No. 3, took effect on January 1, 1967, over four years after the effective date of the abrogation of the court-made defense of mu-

nicipal tort immunity. Brown County and Continental nonetheless take the view that Endorsement No. 3 refers to that defense, *i.e.* that Endorsement No. 3 commits Continental to forego a defense that would have been unavailable in 1967 even without the endorsement. On this view the endorsement is meaningless, and that is precisely what Brown County and Continental assert:

"As to what purpose Endorsement No. 3 served in the policy, we submit that it actually served no purpose in the light of the *Holytz case*. It was merely included unnecessarily since such an Endorsement had been in Continental's policy issued to governmental units prior to the *Holytz case* . . . ."

The construction urged by Brown County and Continental entirely neutralizes Endorsement No. 3 and should not be adopted if that endorsement is susceptible of another construction which gives effect to all of the policy's provisions and is consistent with the general intent. *Inter-Insurance Ex. v. Westchester Fire Ins. Co., supra,* 25 Wis.2d at 106.

The construction urged by Brown County and Continental is not the only one to which Endorsement No. 3 is susceptible. It is reasonable to suppose that after the *Holytz* holding took effect Continental continued to use this endorsement to indicate that Continental waived whatever defense might be available to a municipality merely by virtue of its status as a governmental unit. Although the court-made defense of total municipal tort immunity was no longer available to Brown County, the statutory limit on recovery of damages was, and the continued use of the endorsement after *Holytz* may reasonably be understood as a means of waiving the latter defense.

Because Endorsement No. 3 is open to two constructions, one of which renders the endorsement meaningless,

the construction which gives the endorsement meaning is to be preferred.

The construction favored by Stanhope is consistent with our reasoning in *Marshall v. Green Bay*, 18 Wis.2d 496, 118 N.W.2d 715 (1963), in which this court was called upon to interpret an insurance policy written by Continental containing an endorsement identical to Endorsement No. 3 in the policy in the case at bar. Although *Marshall v. Green Bay* was decided after *Holytz*, *Marshall* arose from a tort occurring before the *Holytz* holding took effect and therefore was decided upon the basis of the pre-*Holytz* rule of immunity. In *Marshall* we overruled *Pohland v. Sheboygan*, 251 Wis. 20, 27 N.W.2d 736 (1947) and held that the power of a city to waive its tort immunity need not rest upon an express grant of statutory authority. We held that by the inclusion of the endorsement the city waived its immunity for such acts as are covered by the policy to the extent of the policy limits. We reasoned that the purpose of the court-made immunity rule was to protect the public treasury. The immunity can be waived by the municipality when it has achieved that purpose by insurance and believed a waiver to be desirable.

Although in the instant case we confront the question of whether a governmental entity may waive not a court-made rule of immunity but a legislatively enacted limitation on recovery of damages from itself, we believe the reasoning of *Marshall* is applicable. The legislature authorized government liability to protect the injured party; the legislature limited recovery to protect the public purse. The municipality's purchase of a liability insurance policy which has a specific waiver endorsement fulfills both legislative objectives: The injured party is compensated; the public treasury is protected. The effect of the acquisition of insurance is to make the insurer liable for losses which it contracted to cover,

while protecting the public treasury. To the extent a governmental body carries liability insurance with policy limits exceeding the statutory limitations on recovery and expressly waives its defense, the statutory limitation on recovery does not serve any legitimate public purpose.

Therefore we hold that by the inclusion of Endorsement No. 3 in the liability policy between Brown County and Continental, both Brown County and Continental waived the statutory defense of limitation of recovery under secs. 81.15 and 895.43 and were liable for such damages as are covered by the policy, to the extent of the policy limits. We therefore modify the judgment accordingly.

In *Sambs v. Brookfield, supra,* 66 Wis.2d at 317, we expressed concern that if the mere purchase of an insurance policy with coverage in excess of $25,000 were construed to be a waiver of the statutorily established limitations on recovery, there would be a lack of uniformity in the state as to the limitations on recovery against governmental units. We recognize that the decision in the case at bar will permit this lack of uniformity because some governmental entities will purchase insurance policies with express waivers of the statutory limitations on recovery and others will not. We conclude, in the absence of an expression of legislative intent to the contrary, that the public interest in compensating persons injured by wrongful acts of the government takes precedence over the goal of uniformity.

V.

Brown County and Continental cross-appeal from the trial court's denial of their motion for judgment notwithstanding the verdict and their motions to change various answers in the special verdict. In their brief on cross-

appeal they do not contest the jury's finding that Brown County was negligent in the manner in which it constructed and maintained the access road to the airport, but only the finding that such negligence was a cause of the accident and the injuries to Stanhope.

If there is any credible evidence to sustain a jury's finding of causal negligence this court will not overturn that finding; special weight is given the jury's finding where it has had the specific approval of the trial court. *Peeples v. Sargent,* 77 Wis.2d 612, 628, 253 N.W.2d 459 (1977). In the instant case the trial court approved the jury's findings of causal negligence.

Stanhope alleged that Brown County was negligent in allowing gravel to remain on the road, in failing to provide adequate lighting and warning signs, in allowing depressions to exist on the road, and in designing the road wth an S-curve when it could have been designed more safely. Although the jury found that Brown County was negligent in the manner in which it constructed and maintained the access road, the verdict did not require the jury to specify the respect or respects in which Brown County was negligent. We conclude, however, that there was credible evidence to sustain findings by the jury that Brown County was negligent in its design and lighting of the road as well as its failure to remove depressions in the vicinity of the S-curve, and that such negligence contributed to the accident.

Daniel Gaffney, an engineering consultant, testified that the road design and lighting created an "optical trap" and that the curve was hazardous. He stated that these physical components of the road were a contributing and probably major cause of the accident.

David Evans, who was working in the parking booth at the airport the evening of the accident, testified that there were dips and depressions in the area of the S-

curve. Janice Solomon testified that in that area there were depressions in the road, some across the whole road.

Beverly Stanhope testified that she felt the car dip just before it swerved. Harley Stanhope testified that he saw the depression which the car tire hit.

Brown County and Continental attempt to impeach Harley Stanhope's testimony by pointing to a signed statement he gave the police one and one-half hours after the accident: "When we left the airport, I was talking with the women in the back seat. When I looked out again, we were going sideways and then we rolled over." Brown County and Continental assert that this statement implies that Harley Stanhope did not see any depression.

The testimony we have summarized is credible evidence sustaining the jury's findings that Brown County was causally negligent in the design and lighting of the access road and in failing to repair depressions in the vicinity of the S-curve.

Brown County and Continental also cross-appeal from the trial court's denial of their motion for a new trial. Their motion for a new trial was made on numerous grounds: They asserted that the jury's finding of causal negligence on the part of Brown County is contrary to the great weight and clear preponderance of the evidence; that the trial court erred in denying their motions for a mistrial made on the grounds that Stanhope's conduct biased the jury; that the jury did not give due deliberation before returning its verdict; and that the trial court erred in failing to instruct the jury that a 15 mile-per-hour speed limit applied at the scene of the accident. Finally they also requested a new trial in the interest of justice.

None of these grounds for a new trial is discussed in the briefs of Brown County and Continental on appeal. We do not find it necessary to discuss them in detail.

The trial court stated its reasons for denying the motion for a new trial. We have reviewed the record and conclude that there was no abuse of discretion. *DeGroff v. Schmude,* 71 Wis.2d 554, 563, 238 N.W.2d 730 (1976).

Finally, Brown County and Continental cross-appeal from the trial court's denial of their motion for credit for the $45,000 for which GM settled with the Stanhopes. No evidence was introduced at trial relevant to GM's alleged causal negligence, and the special verdict did not cover this issue. Brown County and Continental concede that under existing Wisconsin law they may not receive credit for this settlement. *Papenfus v. Shell Oil Co.,* 254 Wis. 233, 35 N.W.2d 920 (1949); *Kerkhoff v. American Automobile Ins. Co.,* 14 Wis.2d 236, 242, 111 N.W.2d 91 (1961). However Brown County and Continental urge this court to overrule these cases and adopt the rule applied in *Snowden v. D.C. Transit System, Inc.,* 454 F.2d 1047 (D.C.C. 1971). We conclude that no change need be made.

*By the Court.*—Order affirmed; judgment modified and as modified, affirmed.